James BROWN, Plaintiff,

v.

George SUMNER, et al., Defendants.

No. CV–R–85–381–ECR.

United States District Court,
D. Nevada.

Dec. 9, 1988.

James Brown, Carson City, Nev., in pro. per.

Brian McKay, Atty. Gen. by Arthur G. Noxon, Deputy Atty. Gen., Carson City, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

James Brown, a black inmate at the Northern Nevada Correctional Center ("NNCC"), has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against George Sumner, the Director of the Nevada Department of Prisons, John Slansky, the warden of NNCC, and Eugene Ewing, an associate warden at NNCC. Brown claims that Sumner, Slansky, and Ewing (hereinafter "defendants") violated his constitutional rights by prohibiting him from practicing independent hobbycraft as a television and radio repairman. In Count I of his complaint, Brown alleges that the defendants violated his fourteenth amendment rights by refusing to allow him to act as a repairman on the basis of his race. In Count II of his complaint, Brown asserts the same factual allegations and claims that this racial discrimination constituted the type of cruel and unusual punishment forbidden by the eighth amendment. Defendants have moved for summary judgment on both counts and Brown has opposed this motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of establishing that there is no genuine issue of material fact. If this burden is met, the opposing party must set forth specific facts showing that there is a genu-

ine and material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

To establish such a genuine and material issue, the opposing party must present evidence from which a reasonable jury could return a favorable verdict. *Id.; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo,* 841 F.2d 872, 876 (9th Cir.1988). The role of the court on a summary judgment motion is not to weigh the evidence and make credibility determinations. The court's role is simply to assess whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Thus, even where the evidentiary facts are not in dispute, summary judgment should be denied where a jury might draw contradictory inferences from those facts. *Id.* at 248–50, 106 S.Ct. at 2510–11; *Sherman Oaks Medical Arts Center v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.1982).

FOURTEENTH AMENDMENT CLAIM

Brown's first claim is that the defendants racially discriminated against him in denying him permission to practice hobbycraft as a television and radio repairman. He alleges that the defendants denied him permission because he is black and that the defendants allowed white inmates with prison records similar to his to act as repairmen.

■ In general, prisoners have no fourteenth amendment due process rights to participate in a work, educational, or vocational training program. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Toussaint v. McCarthy,* 801 F.2d 1080, 1106 (9th Cir. 1986), *cert. denied* —— U.S. ——, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Thus, prisoners certainly do not have a due process right to engage in any particular form of vocational program, such as radio and television repairs. *See Peck v. Hoff,* 660 F.2d 371, 373 (8th Cir.1981). Where a state does establish a particular program, however, all

prisoners have a fourteenth amendment equal protection right regarding the administration of that program. Thus, the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs. *Black v. Lane,* 824 F.2d 561, 562 (7th Cir.1987); *cf. Baker v. McNeil Island Corrections Center,* 859 F.2d 124 (9th Cir. 1988) (holding that inmate stated cognizable claim under Title VII by alleging that he was denied employment at prison library due to his race).

■ Defendants in the case at bar strongly assert that Brown's race played no role in their decision to forbid Brown from engaging in hobbycraft. They argue that their decision was based solely on their belief that Brown previously had abused his position as a prison repairman. While incarcerated at Nevada State Prison ("NSP") and prior to his transfer to NNCC, Brown had practiced television and radio hobbycraft. In April of 1983, however, NSP authorities charged Brown with attempting to deliver a television set that he was supposed to repair for one inmate to a different inmate. The NSP Disciplinary Committee found Brown guilty of embezzlement and recommended a review of his hobbycraft privileges. Nevada Dep't of Prisons, Summary of Disciplinary Hearing of Brown, James, Inmate No. 16825 (NSP April 4, 1983). Defendants claim that this disciplinary incident, and not Brown's race, prompted their decision to deny Brown hobbycraft privileges. They maintain that their denial was premised on their belief that Brown was likely to abuse his position as a repairman just as he had done in the past. While Brown denies that he ever attempted to embezzle a television set, he does not dispute that he was found guilty of such a violation.

Despite this disciplinary incident, Brown alleges that the defendants racially discriminated against him because they permitted white inmates who had abused their hobbycraft privileges to continue practicing hobbycraft. Brown specifically points to an incident that allegedly occurred in 1981 in which a white inmate at NNCC struck an-

other inmate in the head with a hammer. According to Brown, the inmate who committed the assault did not lose his hobbycraft privileges even though he had gained access to the hammer through these privileges. Brown also alleges that, in 1986, another white inmate repairman at NNCC was disciplined and placed in solitary confinement for fighting and injuring an inmate who was dissatisfied with the repairs performed on his television set. While the defendants disciplined this inmate repairman for fighting, they apparently did not withdraw his hobbycraft privileges.

Defendants have not presented any evidence to this Court to contradict or refute Brown's account of these two incidents involving white inmates with hobbycraft privileges. From these accounts, a reasonable jury could conclude that the defendants have treated Brown differently from white inmates who have violated prison rules while engaging in hobbycraft. A reasonable jury might also infer from these accounts that Brown was treated differently due to his race. Such racial discrimination would violate the equal protection clause of the fourteenth amendment. *Black v. Lane*, 824 F.2d at 562.

Thus, a genuine issue of material fact exists as to whether the defendants denied Brown hobbycraft privileges due to his prior abuse of such privileges or due to his race. Consequently, this Court shall not enter summary judgment on Count I of Brown's complaint.

EIGHT AMENDMENT CLAIM

Count II of Brown's complaint alleges that the defendants' refusal to allow him to practice hobbycraft due to his race violated his eighth amendment right to be free from cruel and unusual punishment. In moving to dismiss this count, defendants argue that, as a matter of law, denying a prisoner the opportunity to repair radios and television sets cannot constitute cruel and unusual punishment. This argument, however, fails to address the real issue in Brown's complaint. The question is not whether the denial of hobbycraft privileges constitutes cruel and unusual punishment, but whether a denial of such privilege *on racially discriminatory grounds* constitutes cruel and unusual punishment.

■ The eighth amendment' prohibition of cruel and unusual punishment applies to the conditions of a prisoner's incarceration because such conditions are a part of the penalty imposed on criminal offenders. *See Rhodes v. Chapman*, 452 U.S. 337, 344-47, 101 S.Ct. 2392, 2397-2400, 69 L.Ed.2d 59 (1981). Thus, the eighth amendment applies to all conditions within a prison, including work programs, medical care, housing facilities, sanitation standards, security measures, etc. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Toussaint*, 801 F.2d at 1092, 1107, 1111-12. In regard to rehabilitative programs, however, almost all the Courts of Appeals have held that enforced idleness due to a lack of work, educational, and vocational training programs does not constitute cruel and unusual punishment. *See Toussaint*, 801 F.2d at 1107 & n. 18 (summarizing this body of law). These appellate decisions, though, are not directly relevant to the case at bar because they did not involve any prisoners who alleged racial discrimination as the cause of their forced idleness.

■ To analyze an eighth amendment claim, courts must determine whether the alleged conduct violates "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). To be cruel and unusual punishment, the actions of prison officials "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084 (citing *Estelle*, 429 U.S. at 105-06, 97 S.Ct. at 921-22). Violations of the eighth amendment must involve the "unnecessary and wanton infliction of pain." *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977) (quoting *Estelle*, 429 U.S. at 103, 97 S.Ct. at 291). Thus, "[i]t is obduracy and wantonness, not inadvertence or error in

good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084.

While the Supreme Court has established these general guidelines for analyzing eighth amendment claims, it never has addressed directly the issue of whether racial discrimination constitutes cruel and unusual punishment. Nevertheless, we can draw guidance in deciding this issue from the Court's opinion in *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). In that case, the Court held that the eighth amendment did not prohibit Georgia from sentencing a black inmate to death because the inmate had failed to show "that race was a factor in his particular case." *Id.* 107 S.Ct. at 1775. This decision implies that if the inmate had been able to show that he was a victim of racial discrimination, the eighth amendment would have prohibited such discrimination. This Court also notes that in the last twenty-five years, Congress has enacted a panoply of laws that forbid racial discrimination in access to housing, employment, credit, public accommodations, and many other areas. These laws are premised on American society's gradual realization that treating individuals differently due to their race is a horrendous affront to basic human dignity.

█ This Court finds, therefore, that the eighth amendment's cruel and unusual punishments clause prohibits state authorities from administering prison programs in a racially discriminatory manner. Racial discrimination clearly is repugnant to our society's current standards of decency. Racial discrimination also inflicts the type of unnecessary and wanton pain that is forbidden by the eighth amendment. Thus, we hold that while a prison inmate does not have an eighth amendment right to participate in a work program, he does have an eighth amendment right to be considered for those programs that do exist without regard to his race, creed, color, or national origin.

█ As previously stated, Brown has set forth sufficient factual allegations which, if believed, could lead a jury to conclude that the defendants' decision to deny him hobbycraft privileges was based on racial grounds. Consequently, we find that Brown's allegations state a cognizable eighth amendment claim pursuant to 42 U.S.C. § 1983.

IT IS, THEREFORE, HEREBY ORDERED that defendants' Motion for Summary Judgment (document # 11) is DENIED.