893 F.2d 1336
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pearly WILSON, Plaintiff-Appellant,
v.
Richard P. SEITER; Harry K. Russell; and Norris W.
McMackin, Defendants-Appellees.
 No. 89-3419.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1990.
 
 On Appeal from the United States District Court for the Southern District of Ohio.
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Pearly Wilson, appeals from an order granting summary judgment to the defendants in this 42 U.S.C. Sec. 1983 action. Wilson, an inmate at the Hocking Correctional Facility (HCF), claimed due process and equal protection violations in connection with discipline to which he was subjected. The district court found the defendants entitled to qualified immunity on the due process claim regarding posting of prison rules, and further determined that the plaintiff failed to adduce adequate evidence to support his equal protection theory that he was harassed, disciplined, and denied a transfer for racially discriminatory reasons. We affirm.
 
 I.
 
 2
 On May 16, 1983, Wilson was transferred to the HCF, a state prison located in Nelsonville, Ohio. The plaintiff, a black man, alleges that white prison guards and medical personnel at HCF subjected him to extensive harassment including intentional denial of necessary medical care and unwarranted shakedown searches because of his race. In response to this purported mistreatment, Wilson sought a transfer from HCF to another prison facility on September 21, 1983. The transfer request was denied by the HCF reclassification committee and defendant Harry Russell, the HCF superintendent at that time. This decision, according to Wilson, was infected with the same racial animus that led to his harassment.
 
 
 3
 One month after the HCF committee and Russell turned down Wilson's transfer petition, the prison posted and implemented a rule limiting the amount of inmates' personal property. Specifically, the rule restricted the amount of property each inmate could keep in his living space. When HCF guards found that Wilson maintained too many possessions, they warned him that he had to conform to the new rule by the following day or face disciplinary sanctions. Wilson failed to comply with the rule to the guards' satisfaction, and he was issued a conduct report for disobedience. The HCF Rules Infraction Board initially found Wilson not guilty of insubordination, but reversed its determination after Russell directed the board to reconsider its ruling in light of the new prison rule. Ultimately, the plaintiff was disciplined in November of 1983 for violating the new personal property rule after defendants Russell and Richard Seiter, then the director of the Ohio Department of Rehabilitation and Correction, affirmed the board's determination. In Wilson's view, the actions of Russell and Seiter were racially motivated. Wilson also argues that the HCF failed to publish or post a comprehensive set of prison rules until August of 1984, months after Wilson was sanctioned for violating the specific, posted rule concerning personal property.
 
 
 4
 Wilson filed this suit on July 31, 1984, and then amended his complaint on December 3, 1984. The amended complaint sets forth two basic claims against defendants Russell, Seiter, and former HCF Superintendent Norris McMackin in their individual capacities.[1] First, the plaintiff contends that the defendants' failure to post prison rules, in conjunction with his punishment under such rules, constitutes a violation of due process in contravention of the fourteenth amendment.[2] Second, the plaintiff asserts that the racial harassment, the denial of his transfer request, and the disciplinary action taken against him either by the defendants or with their knowledge and consent all were racially motivated, thereby implicating the fourteenth amendment's equal protection clause.
 
 
 5
 The district court granted summary judgment in favor of the defendants on both causes of action.[3] The court found that all three defendants were entitled to qualified immunity on the due process claim because the obligation to post prison rules was not clearly established when the defendants failed to take such action. The district court further reasoned that the three defendants could not be held responsible strictly as supervisors for the conduct supporting the equal protection claim, and that the two acts in which they were personally involved did not give rise to a viable equal protection claim. We review these determinations de novo. See, e.g., Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146 (6th Cir.1988).
 
 II.
 
 6
 The plaintiff's due process argument stems from his right to be disciplined only in accordance with posted or published prison regulations. See, e.g., Robles v. Coughlin, 725 F.2d 12, 16 (2d Cir.1983); Duckett v. Ward, 458 F.Supp. 624, 626 (S.D.N.Y.1978). The defendants' entitlement to qualified immunity, therefore, depends upon whether the constitutional necessity of posting or publishing prison rules was clearly established in 1983 when the defendants "took [their] challenged actions." Poe v. Haydon, 853 F.2d 418, 423-24 (6th Cir.1988), cert. denied, 109 S.Ct. 788 (1989). Wilson contends that the posting or publishing requirement was arguably established by several district court cases prior to May 16, 1983, see, e.g., Jones v. Wittenberg, 330 F.Supp. 707, 720 (N.D.Ohio 1971), aff'd on other grounds sub nom. Jones v. Metzger, 456 F.2d 854 (6th Cir.1972), and clearly settled by the Second Circuit's December 27, 1983, decision in Robles. See 725 F.2d at 16. We disagree.
 
 
 7
 As a general rule, a right can only be clearly established based upon precedent from the Supreme Court, the court of appeals for this circuit, or the district court where the case arose. See Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988). We have recognized, however, that "[i]n an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law." Id. Decisions of other courts can provide such clearly established law only if they "point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." Id. The due process right asserted by Wilson fails the latter test.
 
 
 8
 The Second Circuit's citations in Robles reflect the paucity of authority for the requirement that prison rules be posted or published. See Robles, 725 F.2d at 16. The Robles court identified four cases in support of its holding; all four of the cases are district court decisions from the 1970s. Moreover, the Second Circuit merely reversed a sua sponte summary dismissal of an in forma pauperis section 1983 action, cf. 28 U.S.C. Sec. 1915(d) (permitting summary dismissal if "the action is frivolous or malicious"), and instructed the district court to consider the four cited cases on remand. The Second Circuit did not explicitly embrace the legal conclusion reached in the four cases that it cited. See Robles, 725 F.2d at 16. Under the circumstances, we find that the district court correctly accorded the defendants qualified immunity. This is precisely the situation where "a mere handful of decisions of other circuit and district courts ... cannot form the basis for a clearly established constitutional right in this circuit." Ohio Civil Serv. Employees, 858 F.2d at 1177-78.
 
 III.
 
 9
 To succeed on his equal protection claim, Wilson must establish that "a state actor intentionally discriminated against [him] because of membership in a protected class." Johnson v. Morel, 876 F.2d 477, 479 (5th Cir.1989) (en banc ). The plaintiff can only defeat the defendants' summary judgment motion, therefore, by adducing sufficient evidence to raise a genuine issue of fact regarding intentional discrimination perpetrated by the three individual defendants. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 10
 Only two of the incidents underlying Wilson's equal protection claim involved direct participation by any of the defendants. First, the plaintiff contends that Russell (and the HCF reclassification committee) denied Wilson's transfer request for racial reasons.[4] The record is devoid of evidence to support this allegation; the plaintiff merely submitted an affidavit stating his "belief that the denial of [his] request for transfer was racially motivated." (App. at 116). Because the "subjective beliefs of the plaintiff ... are insufficient to create a genuine issue of material fact" even in race discrimination cases where intent is at issue, McMillian v. Svetanoff, 878 F.2d 186, 190 (7th Cir.1989), we find that the district court properly granted summary judgment as to Wilson's equal protection claim regarding the denial of his transfer request.
 
 
 11
 The second instance of the defendants' direct involvement in allegedly discriminatory conduct, which centers around the confiscation of Wilson's excess personal property, likewise furnishes an inadequate basis for section 1983 liability. The plaintiff contends that defendants Russell and Seiter upheld the disciplinary sanction against him for violating personal property limits even though no penalty was imposed upon a similarly situated white inmate named Al Haynick. The principal flaw in this logic, as the district court observed, is that Haynick and Wilson were not similarly situated. Haynick was permitted to keep his collection of carpentry tools in the prison furniture-making room, thereby saving the institution the expense of purchasing its own tools. Wilson's excess personal property, in contrast, was of no value to the prison and therefore could not be stored in a location where it could be put to use for the prison's benefit. Moreover, HCF officials did grant Wilson the right of periodic access to the property that was taken from him.[5] For these reasons, we agree with the district court that the prison's confiscation of the plaintiff's property does not raise a genuine issue of material fact for trial insofar as the plaintiff's equal protection claim is concerned.
 
 
 12
 The balance of Wilson's equal protection claim is based upon incidents of harassment in which none of the three named defendants directly participated. While the plaintiff has introduced evidence to substantiate his allegations of racially motivated shakedown searches and denial of medical treatment (App. 125, 170), the record contains nothing to suggest that the defendants caused or condoned such conduct. Because "there is no concept of supervisor strict liability under section 1983[,]" Harris v. Greer, 750 F.2d 617, 618 (7th Cir.1984) (dismissing claims against prison warden); accord Wilson v. Beebe, 612 F.2d 275, 275-76 (6th Cir.1980), and Wilson has identified no evidence suggesting that any of the defendants "caused or participated in an alleged constitutional deprivation[,]" Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983), the district court appropriately granted summary judgment to the defendants on the plaintiff's equal protection claim.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Wilson is precluded from seeking damages from the defendants in their official capacities by the Supreme Court's recent decision in Will v. Michigan Dep't of State Police, 491 U.S. ---, 109 S.Ct. 2304 (1989), which established that neither a State nor its employees acting in their official capacities are "persons" for purposes of liability for money damages in 42 U.S.C. Sec. 1983 suits. Id. at ---, 109 S.Ct. at 2311-12. Although the rationale of Will does not bar suits against state officials in their individual capacities, we recently held that "[t]he capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued[.]" Rice v. Ohio Dep't of Transp., 887 F.2d 716, 719 (6th Cir.1989). Application of this concept to bar the claims for money damages against the three individual defendants in this case, which was not urged in the district court, is unnecessary based upon our ruling for the defendants irrespective of whether they can be sued for money damages as individuals
 
 
 [2]
 The due process claim obviously cannot encompass the personal property rule, which was posted before it was enforced against the plaintiff
 
 
 [3]
 The process by which the district court resolved the defendants' requests for summary judgment can be characterized as procedurally unconventional, although not inappropriate. The court initially granted the defendants' motion for summary judgment as to the due process claim on August 17, 1987. (App. at 30-32). The defendants then moved for summary judgment on the equal protection claim while the plaintiff sought reconsideration of the court's due process ruling. When the district court granted the plaintiff's motion for reconsideration on February 22, 1988 (App. at 95-96), which put both claims at issue again, the defendants immediately moved for reconsideration of that order. The district court, therefore, ultimately resolved the due process issue on the defendants' motion for reconsideration and simultaneously decided the equal protection claim on the defendants' motion for summary judgment
 
 
 [4]
 The defendants suggest that Wilson's equal protection claim concerning his transfer denial must fail because he had no liberty interest in a transfer. See Meachum v. Fano, 427 U.S. 215, 224 (1976). The rationale of Meachum would defeat a due process claim concerning the refusal to transfer Wilson, but the plaintiff's equal protection claim does not depend upon the existence of a cognizable due process right. See, e.g., Brown v. Sumner, 701 F.Supp. 762, 764 (D.Nev.1988)
 
 
 [5]
 The record reflects that the HCF officials did not destroy Wilson's excess property; the materials were placed in the prison vault and the plaintiff was given access to them for one hour per month. (App. at 78, 80)