951 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ricky JONES, Plaintiff/Appellant,
v.
Thomas DONOVAN, Education Director Waupon Correctional
Institution, Pamela Fitzer, Prep Adviser, University of
Wisconsin Center System, Sally Giebel, Program Review
Coordinator, Kettle Moraine Correctional Institution, et
al., Defendants/Appellees.
 No. 90-3631.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 12, 1991.*
Decided Dec. 18, 1991.
 
 Before WOOD, JR., and FLAUM, Circuit Judges and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Pro se prisoner Ricky Jones brought this 42 U.S.C. § 1983 action against the defendants alleging violations of his federal constitutional right to equal protection in connection with his removal from an inmate Post-Secondary Re-Entry Education Program ("PREP") in 1988 and his rejection for readmission into the PREP program in 1989. Additionally, Mr. Jones alleged a violation of his due process rights arising from the denial of a formal hearing on conduct report 332706 and alleged violations during his hearing on conduct report 355874. Mr. Jones appeals the district court's grant of summary judgment in favor of the defendants.[1] Upon review of the district court's order, we have determined that the district court properly and thoroughly resolved the issues presented on appeal; therefore, we affirm for the reasons stated in the attached district court order.[2]
 
 
 2
 IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
 
 OF WISCONSIN
 
 3
 RICKY JONES, Plaintiff,
 
 
 4
 v.
 
 
 5
 THOMAS DONOVAN, LYNN OESTREICH, PAMELA FITZER, SALLY GIEBEL
 
 
 6
 and MARK REIMER, Defendants.
 
 OPINION and ORDER
 
 7
 89-C-1027-C.
 
 
 8
 Nov. 7, 1990.
 
 
 9
 This is a civil action for injunctive and monetary relief brought pursuant to 28 U.S.C. § 1983. In his complaint, plaintiff alleges that the actions of defendants violated his constitutional rights under the equal protection clause and the due process clause of the Fourteenth Amendment. In a previous order entered on January 24, 1990, I granted plaintiff leave to proceed in forma pauperis.
 
 
 10
 Presently before the court is defendants' motion for summary judgment. I conclude that plaintiff's removal from the PREP program in 1988 and rejection for the PREP program in 1989 did not violate his rights under the equal protection clause, that plaintiff waived his right to a formal due process hearing on conduct report 332706 and that the denial of live witness testimony and the statement of reasons given at his disciplinary hearing on conduct report 355874 did not violate his rights under the due process clause.
 
 
 11
 To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Great Escape, Inc. v. Union City Body Co., 791 F.2d 532, 536-37 (7th Cir.1986). Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. Celotex, 477 U.S. at 322.
 
 
 12
 Based on the parties' proposed findings of fact and their supporting affidavits and exhibits and for the purpose only of deciding these motions, I find there is no genuine issue as to the following material facts.
 
 Undisputed Facts
 
 13
 Plaintiff is an Afro-American inmate currently incarcerated at the Waupun Correctional Institution.[1] Defendant Thomas Donovan is the Education Director at the Waupun Correctional Institution and was so employed at all times relevant to this action. Defendant Pamela Fitzer is, and was at all times relevant to this action, employed as the Post-Secondary Re-Entry Education Program, or PREP, adviser for the University of Wisconsin Center System. Defendant Sally Giebel is, and was at all times relevant to this action, employed as the Program Review Coordinator at the Kettle Moraine Correctional Institution. Defendant Mark Reimer was at all times relevant to this action employed as a lieutenant at the Kettle Moraine facility. Defendant Lynn Oestreich is employed as a captain at the Waupun institution, but was employed as a lieutenant at all times relevant to this action.
 
 
 14
 Plaintiff was incarcerated at the Waupun Correctional Institution from March 4, 1988 through November 22, 1988. The PREP program at the institution is a college-level educational program run by the University of Wisconsin Center System. As part of his duties as the Education Director, defendant Donovan serves as the liaison between the PREP program instructors and the program review committee at the Waupun institution and oversees the educational programs within the institution.
 
 
 15
 Courses offered in the PREP program consist of a series of lectures, one building upon the information gained in the preceding lecture, with a definite beginning and ending date. In this sense, PREP courses are very similar to regular college courses. Other education programs at the Waupun facility are designed to accommodate inmates' moving into the institution at all times of the year, and to accommodate those inmates who may have to miss several weeks of classes for one reason or another.
 
 
 16
 During the 1988 spring PREP program defendant Donovan allowed a white inmate, Harlan Richards, to complete the semester of PREP courses after being confined to his cell in temporary lockup status for seventeen days.[2] When Richards was placed in temporary lockup status on February 27, 1988, he had attended PREP courses for six or seven weeks. Although Richards did not attend PREP classes from February 27 through March 16, 1988, he was allowed to remain in his cell with complete access to his school books.
 
 
 17
 Plaintiff enrolled in the fall PREP program at the Waupun institution.[3] From September 12 through September 29, 1988, he was placed in temporary lockup status in the program segregation section of the north cell hall. Beginning on September 29, 1988, he was placed in adjustment segregation status for three days. Plaintiff did not attend PREP classes during the time he was in temporary lockup and adjustment status.
 
 
 18
 It is the usual practice at the Waupun Correctional Institution to remove inmates from the PREP program if they have missed a significant number of classes. On September 30, 1988, defendant Donovan wrote a memorandum to the program review coordinator recommending that plaintiff be removed from student status and be seen by the Program Review Committee.[4] The basis for this recommendation was plaintiff's lengthy absence from classes during the first month of the semester. Subsequently, the Program Review Committee removed plaintiff from the PREP program and placed him in a paid, unassigned status until he could begin a work assignment.
 
 
 19
 It is the usual practice at the Waupun facility not to fill an open position in the PREP program more than two to three weeks from the start of the semester because a new student would not be able to catch up to the rest of the class. Although no records exist to show whether plaintiff's spot in the PREP program was filled after October 6, 1988, defendant Donovan's recollection is that the spot was not filled.[5]
 
 
 20
 From August 25, 1989 to September 13, 1989, plaintiff was incarcerated at the Kettle Moraine Correctional Institution. As part of her job duties, defendant Fitzer is responsible for enrolling students in, and overseeing, the PREP program at the Kettle Moraine institution.
 
 
 21
 The University of Wisconsin Center System has initiated a plan to limit enrollment, and has placed a strict enrollment limit on every university within the state system. The PREP program at Kettle Moraine falls under the mandate of these enrollment restrictions.
 
 
 22
 On or about August 28, 1989, plaintiff attempted to enroll in the PREP program for the 1989 fall semester. However, because the PREP program had already reached its capacity, defendant Fitzer put plaintiff's name on a waiting list.
 
 
 23
 Prior to the PREP program's reaching its capacity, no one informed Fitzer that plaintiff was coming to the Kettle Moraine institution or that plaintiff should be given preference over other inmates wishing to enroll in the PREP program. Enrollment in the PREP program at the Kettle Moraine facility is on a first-come, first-served basis, for those inmates who meet the minimum eligibility requirements. Defendant Fitzer does not have the power either to raise the enrollment cap placed on the program by the University of Wisconsin Center System, or to remove a student from the program who has already enrolled.[6]
 
 
 24
 On August 29, 1989, plaintiff appeared before the Program Review Committee at the Kettle Moraine institution. Defendant Giebel was a member of the committee. The committee assigns inmates either to work or to school. Plaintiff told the committee that he was interested only in the PREP program and demanded placement there. Giebel told plaintiff that because the PREP program was full, he would have to choose either a work or school assignment. When plaintiff began to protest a work assignment, Giebel stated, "assignment school." Defendant Giebel has no power to increase the enrollment cap in the PREP program.
 
 
 25
 On September 1, 1989, plaintiff was issued conduct report 332706 charging him with refusing to work or attend school, a violation of Wis.Admin.Code § DOC 303.61.[7] On September 1, 1989, defendant Reimer gave plaintiff a copy of the conduct report and plaintiff completed a form DOC-71, "Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time." The form contains clear language describing an inmate's rights to a disciplinary hearing, the potential penalties the inmate faces upon a finding of guilt, an inmate's right to waive a formal disciplinary hearing, and the consequences of choosing to waive such rights. (Copy attached to Opinion). Plaintiff signed his name next to a statement certifying that he had read the form, or had had it read to him, and fully understood his right to a disciplinary hearing. Plaintiff also signed his name under the "Waiver of Formal Due Process Hearing" and "Waiver of Time Limits" sections, after checking boxes indicating that he: 1) had read or had had read to him the notice of formal due process rights; 2) understood his rights; 3) understood that when he waived his rights, he waived the right to a staff advocate and to request witnesses, along with other possible rights; 4) waived his right to a formal due process hearing, and 5) did not admit that he was guilty of the conduct charged. Plaintiff also checked the box indicating that he waived the two-day minimum time limit to prepare for a hearing and had no objections to an earlier hearing.[8]
 
 
 26
 Since September 13, 1989, plaintiff has been incarcerated at the Waupun Correctional Institution. On October 4, 1989, Officer Gorske issued conduct report 355874 charging plaintiff with theft and possession of contraband, in violation of Wis.Admin.Code §§ DOC 303.34 and 303.47. On the same date, plaintiff received a copy of conduct report 355874 and signed form DOC-71, but did not waive his right to a full due process hearing.
 
 
 27
 Melanie Houge was assigned as plaintiff's staff advocate. On October 5, 1989, plaintiff signed form DOC-73, "Inmate's Request for Attendance of Witnesses." The form lists nurse Char Wrzsinske and Officer Gorske as the witnesses plaintiff wished to have at his hearing. The following day, defendant Oestreich, the hearing officer for conduct report 355874, signed form DOC-73, indicating that he had decided that nurse Wrzsinske would not attend plaintiff's hearing, but would provide a statement.
 
 
 28
 Houge spoke with plaintiff on October 6, 1989 regarding the upcoming hearing. Plaintiff asked Houge to talk to plaintiff's roommate and the inmate who had occupied the cell before plaintiff to see whether they had any information about the spoon and other articles that were found in plaintiff's cell and were the subject of the conduct report. On October 10, 1989, Houge interviewed Johnny Miller, plaintiff's roommate, and Nathaniel Jordan, the inmate formerly housed in plaintiff's cell. Later that day, plaintiff's hearing on conduct report 355874 was held. At the beginning of the hearing, plaintiff objected because inmate Miller and Jordan were not present to testify as witnesses. Houge told defendant Oestreich that plaintiff had not requested the inmates' attendance at the hearing, but merely that they be interviewed. Houge stated that she had interviewed the inmates and was prepared to testify as to the information she received from them. Based on Houge's statements, defendant Oestreich decided to proceed with the hearing.
 
 
 29
 Evidence presented at the hearing included a statement from plaintiff, testimony from Officers Gorske and Houge and a telephone statement from Nurse Wrzsinske. Gorske confirmed his initial report that on October 3, 1989, he found a spoon, similar to those used in the prison cafeteria, at the head of plaintiff's bed. He testified also that he had found a wire, television cable, a roll of masking tape, and a container of unmarked cream in plaintiff's possession. Plaintiff testified that he did not know anything about the spoon, the wire or the tape, and admitted that the cream was his. Nurse Wrzsinske's telephone statement confirmed that the cream was not labeled. Houge testified that Miller and Jordan told her that the materials in question were not theirs.
 
 
 30
 The hearing committee found plaintiff guilty of violating both Wis.Admin.Code §§ DOC 303.34(b) and 303.47, but dismissed the charge of having unauthorized cream. The following written reason for the finding of guilt was given:
 
 
 31
 There is no reason to have a cafeteria spoon in the cell. It was located with [plaintiff's] cream on the shelve [sic]. By possessing it [plaintiff] aided and abetted theft. We find it was intentional. We also find [plaintiff] knowingly possessed masking tape that is not authorized.
 
 
 32
 Cream mislabeled inadvertent by nurse. Statements by witnesses irrelevant.
 
 
 33
 Sergeant TeBeest gave plaintiff a copy of form DOC-84 on October 17, 1989.
 
 Disputed Fact
 
 34
 The parties dispute whether plaintiff made a request to his advocate that inmates Miller and Johnson be present to testify as witnesses at plaintiff's hearing on conduct report 355874. As explained in the following opinion, this dispute is not material to the decision to grant defendants' motion for summary judgment.
 
 OPINION
 Removal from 1988 PREP Program
 
 35
 Plaintiff contends that defendant Donovan violated his rights under the equal protection clause of the Fourteenth Amendment by not allowing him to re-enroll in the PREP program at the Waupun Correctional Institution during the 1988 fall semester.
 
 
 36
 Although lawful imprisonment does deprive convicted prisoners of many rights, inmates still retain limited constitutional protection including the right to equal protection under the laws. Williams v. Lane, 851 F.2d 867, 871 (7th Cir.1988), cert. denied, 109 S.Ct. 879 (1989) (citing Lee v. Washington, 390 U.S. 33 (1968)). Absent a compelling state interest, racial discrimination in administering a prison violates the equal protection clause of the Fourteenth Amendment. Black v. Lane, 824 F.2d 561, 562 (7th Cir.1987) (black inmate stated cause of action by alleging racial discrimination in the assignment of prison jobs); see also Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir.1981).
 
 
 37
 To prevail on an equal protection claim, a plaintiff must show that the defendants acted with a discriminatory purpose or intent. Minority Police Officers Ass'n v. City of South Bend, 801 F.2d 964, 966 (7th Cir.1986) (citing Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 264-65 (1977)). This discriminatory purpose or intent may be established by proof of the systematic exclusion of persons because of their race or the unequal application of a law, policy or system. Id. at 966-67.
 
 
 38
 In this case, it is undisputed that plaintiff was absent from three weeks of PREP classes during the first month of the 1988 fall semester. Plaintiff argues that the decision to remove him from the program was based on his race, not on his absences. In support of his argument, plaintiff relies on the affidavit of Harlan Richards. Richards, a Caucasian inmate, also missed a number of PREP classes for disciplinary reasons, but was allowed to complete his semester of courses.
 
 
 39
 Plaintiff is correct that if he shows that he was treated differently from a white inmate who was similarly situated, he could raise an issue of material fact whether his removal from the PREP program was racially motivated. See Brown v. Sumner, 701 F.Supp. 762, 764-64 (D.Nev.1988) (summary judgment inappropriate where evidence that black inmate denied hobbycraft privilege was treated differently from white inmates with similar disciplinary records). However, plaintiff and Richards were not similarly situated. Defendant Donovan allowed Richards to remain in the PREP program because he had already attended six or seven weeks of classes and he had access to his books and could continue in his coursework during his seventeen-day placement in temporary lockup. In contrast, plaintiff attended, at most, two weeks of classes before missing three weeks of classes. There is no evidence that plaintiff was able to continue his coursework while being confined to the program segregation section of the institution. Because plaintiff fails to offer evidence to show that his removal from the 1988 PREP program at the Waupun institution was racially motivated, I will grant defendants' motion for summary judgment on this claim.
 
 Rejection from 1989 PREP Program
 
 40
 Plaintiff also contends that defendants Fitzer and Giebel violated his equal protection rights by refusing to enroll him in the PREP program at the Kettle Moraine Correctional Institution for the 1989 fall semester because of his race.
 
 
 41
 To support a claim under the equal protection clause of the Fourteenth Amendment, plaintiff must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. Huebschen v. Department of Health and Social Services, 716 F.2d 1167, 1171 (7th Cir.1983). I have found as fact that defendant Fitzer could not enroll plaintiff in the PREP program at the Kettle Moraine institution because the University of Wisconsin Center System had placed a strict enrollment cap on the program and she had already filled the available spots for the 1989 fall semester. I have also found as fact that neither Fitzer nor Giebel had the power to raise the enrollment ceiling. Plaintiff supplies no facts from which an inference can be drawn that the basis of his rejection for PREP classes was his race rather than the PREP enrollment limit. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's claim that defendants Fitzer and Giebel violated his rights under the equal protection clause.
 
 Waiver of Due Process Rights
 
 42
 Plaintiff contends that defendant Reimer violated his rights under the due process clause by denying him a formal hearing on conduct report 332706.
 
 
 43
 Absent emergency circumstances, an inmate subject to disciplinary confinement is entitled under the due process clause to notice, an impartial hearing, a limited opportunity to call witnesses and a decision based on substantive evidence which sets forth a reason for the decision and the evidence relied upon. See Crowder v. Lash, 687 F.2d 996, 1005 n. 7 (7th Cir.1982). However, an individual can waive his or her due process rights. D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185 (1972). Waivers of constitutional rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. United States ex rel. Williams v. DeRobertis, 715 F.2d 1174, 1178-79 (7th Cir.1983), cert. denied, 464 U.S. 1072 (1984) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).
 
 
 44
 It is undisputed the plaintiff signed form DOC-71 regarding conduct report 332706 both to indicate that he understood his due process rights, and to indicate that he waived those rights. I have found as fact that form DOC-71 is unambiguous in explaining the consequences of waiving the formal hearing. I conclude that when he signed the form, plaintiff made a knowing, voluntary and intelligent waiver of his right to a formal due process hearing on conduct report 332706.[9] Because plaintiff waived his right to a formal due process hearing on conduct report 332706, I will grant defendants' motion for summary judgment on plaintiff's claim that defendant Reimer violated his constitutional rights by denying him a hearing on that report.
 
 
 45
 Denial of Witnesses and Statement of Reasons
 
 
 46
 Finally, plaintiff contends that defendant Oestreich violated his due process rights at the hearing on conduct report 355874. Specifically, plaintiff claims that defendant Oestreich did not allow him to call the witnesses he requested and failed to supply him with an adequate statement of reasons underlying the final decision.
 
 
 47
 Courts do not automatically apply the procedural rules designed for free citizens in an open society to the very different situation presented by a prison disciplinary proceeding. Lenea v. Lane, 882 F.2d 1171, 1174 (7th Cir.1989) (citing Wolff v. McDonnell, 418 U.S. 539, 560 (1974)). Ordinarily, the right to call witnesses is basic to a fair hearing. Prisoners have the right to call witnesses in their defense at a hearing subject to the prison's legitimate security concerns. Wolff, 418 U.S. at 566; Redding v. Fairman, 717 F.2d 1105, 1114 (7th Cir.1983), cert. denied, 465 U.S. 1025 (1984). In a subsequent court challenge, prison officials may be called on to explain the reason for their decision to not allow certain witnesses to testify. Ponte v. Real, 471 U.S. 491, 497 (1985). A prison official's explanation satisfies the requirements of due process if it is related to the prevention of undue hazards to "institutional safety or correctional goals." Id. Further, an official "must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Id., 471 U.S. at 499 (quoting Wolff, 418 U.S. at 566); Redding, 717 F.2d at 1114 (prison officials retain discretion to refuse an inmate's request for witnesses to keep length of hearing to reasonable limits).
 
 
 48
 In this case, the parties do not dispute that defendant Oestreich decided to proceed with plaintiff's hearing without live testimony from inmates Miller and Johnson based on Melanie Houge's representations that plaintiff had requested only that she interview the inmates, that she had done so, and that she was prepared to testify for them. Plaintiff does not aver that Houge failed to interview the inmates or that her testimony did not reflect the statements they made to her. Plaintiff avers only that he asked Houge to request the presence of the inmate witnesses at the hearing and she did not do so. This dispute of fact is not material to a decision on defendants' motion. Even if plaintiff had listed the inmates' names on the witness request form, defendant Oestreich still had the discretion to reject them for legitimate reasons. Oestreich knew at the beginning of the hearing that plaintiff objected to the absence of the inmate witnesses. Based on the availability of statements from the witnesses through the testimony of Houge, it was not a violation of plaintiff's due process rights for Oestreich to decide to keep the length of the hearing within reasonable limits and to proceed without the presence of inmates Miller and Johnson.[10]
 
 
 49
 Similarly, Oestreich's decision to accept a telephone statement from Nurse Wrzsinske rather than live testimony was reasonable under the circumstances. As defendants point out in their brief, plaintiff benefitted from Wrzsinske's testimony. After Wrzsinske stated that she had issued the unlabeled cream to plaintiff, Oestreich dropped the charge against plaintiff regarding the container of cream. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's claim that defendant Oestreich violated his due process rights by not allowing live testimony from certain witnesses at his disciplinary hearing.
 
 
 50
 Under the due process clause, plaintiff is entitled to a written statement of the evidence relied on and the reasons for the disciplinary decision. Wolff, 418 U.S. at 564. The concern regarding the sufficiency of the factfinders' written statement stems from the need to protect an inmate from collateral consequences based on a misunderstanding of the proceeding and to encourage fair decision making. Id. at 565; see also Culbert v. Young, 834 F.2d 624, 629 (1987).
 
 
 51
 In Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445 (1985), the Supreme Court established the standard for review of the sufficiency of the evidence supporting a decision by a prison disciplinary board. Viens v. Daniels, 871 F.2d 1328, 1334 (7th Cir.1989). Due process requires only that there be a "modicum of evidence" to support the findings made in the disciplinary hearing. Hill, 472 U.S. at 455. Under Hill, courts are barred from assessing the relative weight of the evidence. Viens, 871 F.2d at 1335.
 
 
 52
 In addition to providing a written statement of the evidence the hearing committee relied on in reaching its decision, the disciplinary hearing officer must state his or her reasons for the decision. Ordinarily, a mere conclusion that the prisoner is guilty fails to satisfy due process standards. Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir.1987). However, where the charges are simple, even a brief statement that a disciplinary committee based its decision on the conduct report is sufficient. Id.
 
 
 53
 The facts reflect that at plaintiff's hearing on conduct report 355874, Officer Gorske, the staff member who initiated the conduct report, confirmed that on October 3, 1989, he found contraband items in plaintiff's cell, as described in the conduct report.
 
 
 54
 On form DOC-84, Oestreich wrote under "reason for decision" that:
 
 
 55
 There is no reason to have a cafeteria spoon in the cell. It was located with his cream on the shelve [sic]. By possessing it he aided and abetted theft. We find it was intentional. We also find he knowingly possessed masking tape that is not authorized.
 
 
 56
 The charges in conduct report 355874 are not complex. Defendant Oestreich's statement of reasons makes clear that the decision of guilt was based on the testimony of Gorske and his conduct report and on plaintiff's admission that he owned the cream found with the spoon and other contraband. Under Saenz, this statement is constitutionally sufficient. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's claim that defendant Oestreich violated his due process rights by not providing him with a sufficient statement of reasons for his decision.
 
 ORDER
 
 57
 Defendants' motion for summary judgment is GRANTED on all issues. The Clerk of Court is directed to enter judgment for defendants, with prejudice.
 
 
 58
 Entered this 7th day of November, 1990.
 
 
 59
 /s/BY THE COURT:
 
 
 60
 /s/BARBARA B. CRABB
 
 
 61
 /s/District Judge
 
 
 62
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 63
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 64
 TABLE CONT.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Mr. Jones also contends that the district court did not provide him with an opportunity to respond to additional evidence submitted by the defendants in support of their motion for summary judgment. Mr. Jones mischaracterizes the situation. Here, the district court exercised its discretion by considering an affidavit submitted by Mr. Jones even though he failed to explicitly reference it in his proposed findings of fact or his response to the defendants' proposed findings of fact. Because of Mr. Jones' failures, the defendants did not respond to the affidavit. Thus, before considering the affidavit, the district court provided the defendants with an opportunity to respond to the affidavit. This was a proper exercise of the district court's discretion
 
 
 [2]
 Mr. Jones does not challenge the district court's holding concerning the alleged due process violations arising from the hearing on conduct report 355874. Thus, we do not review the portions of the district court's opinion and order dealing with these issues. (Opinion and Order, Nov 7, 1990 pp. 9-12 and pp. 17-22)
 
 
 [1]
 Although neither side sets forth information about plaintiff's race in their proposed findings of fact, the pleadings indicate that the parties do not dispute that plaintiff is Afro-American
 
 
 [2]
 In his affidavit, Harlan Richards avers that he was placed in temporary lockup status and missed twenty-one days of PREP classes during the 1988 fall semester. Defendant Donovan avers that Richards's records indicate that the only time he was placed in temporary lockup status in 1988 was from February 27 through March 16, 1988. These minor disputes of fact do not alter the material, undisputed facts concerning Donovan's reasons for allowing Richards, but not plaintiff, to continue in the PREP program
 
 
 [3]
 The parties do not agree on the exact starting date for the fall semester PREP classes. Defendants aver that classes began on September 6, 1988. Plaintiff avers that he attended two weeks of classes prior to September 12, 1988. The parties do not dispute that plaintiff's absences from the PREP classes occurred during the first month of the 1988 fall semester
 
 
 [4]
 Neither side submitted evidence as to how often the PREP classes were offered or how many PREP classes plaintiff missed. The parties agree that plaintiff was unable to attend classes from September 12 through October 2, 1988, a period of 21 days
 
 
 [5]
 Plaintiff's conclusory averment that, "upon information and belief," he was replaced by a white inmate does not raise a dispute of material fact. See Toro Co. v. Krouse, Kern & Co., 827 F.2d 155, 162 n. 3 (7th Cir.1987) (statements in affidavit based merely on information and belief do not satisfy Fed.R.Civ.P. 56(e)'s mandatory requirement that affidavits be based on personal knowledge)
 
 
 [6]
 Again, plaintiff's averment "upon information and belief" that white inmates were allowed to enroll in the PREP program after plaintiff was not fails to raise a dispute of material fact. See Toro, 827 F.2d at 162 n. 3. In addition, plaintiff does not dispute defendant Fitzer's statement that any inmates in the PREP office when plaintiff arrived would have arrived prior to plaintiff and would have been enrolled prior to plaintiff if openings were available. Plaintiff admits that he was the fourth or fifth name on the waiting list. Presumably, if spaces in the PREP program became available after August 28, 1989, defendant Fitzer would have offered the spots to inmates in the order their names were listed on the waiting list
 
 
 [7]
 At all times relevant to this complaint, the applicable prison administration regulations were listed under the Department of Health and Social Services. The Department of Corrections now has responsibility for these regulations. For the purpose of clarification, I will refer to the current citation for the regulations relevant to the facts in this case
 
 
 [8]
 In his response to defendants' proposed findings of fact, plaintiff asserts that he signed form DOC-71 "thinking he was making [sic] statement to be released from TLU...." Plaintiff fails to support this assertion with a sworn statement in his affidavit filed along with his response to the proposed findings of fact. Even if plaintiff had supported this allegation as required by Fed.R.Civ.P. 56(e), evidence of what he thought he was signing would be inadmissible in light of the unambiguous terms of waiver set out in form DOC-71. See Jackman v. WMAC Inv. Corp., 809 F.2d 377, 380 (7th Cir.1987) (in Wisconsin, parol evidence not admissible to vary terms of complete and unambiguous contract)
 
 
 [9]
 Plaintiff argues that his failure to check one of the boxes immediately above his second signature makes his waiver invalid. These boxes are repetitive of the boxes in the previous sections. Plaintiff's failure to indicate again that he had waived his due process rights does not nullify his initial waiver and signature
 
 
 [10]
 In addition, the statements from the inmates indicated that the contraband at issue did not belong to them. Such testimony is more adverse than favorable to plaintiff's position. Prisoners do not have a constitutional right to call adverse witnesses at disciplinary hearings. Wolff, 418 U.S. at 567