Winston A. MITCHELL, M.D.; Winston A. Mitchell, M.D., Inc., Plaintiffs–Appellants,

v.

FRANK R. HOWARD MEMORIAL HOSPITAL; Robert Harrah; Steven Wentworth, M.D., Defendants–Appellees.

Nos. 87–1913, 87–2069.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1988.

Decided Aug. 9, 1988.

Arthur R. Chenen, Hirschtick, Chenen, Lemon & Curtis, Los Angeles, Cal., for plaintiffs-appellants.

Robert L. Rusky, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, Cal., Theodore A. Kolb, Sullivan, Roche & Johnson, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, Chief Judge, CHOY, and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

From July 1980 until August 31, 1985, appellant Winston A. Mitchell served under oral contract as the radiologist for appellee Howard Memorial Hospital ("the Hospital"), a 38–bed facility that is the only hospital in the rural town of Willits, Mendocino County, California (pop. 4200). After the Hospital terminated its agreement with Dr. Mitchell and entered into an exclusive contract for hospital-based radiology services with Dr. Steven Wentworth, Dr. Mitchell sued in federal district court claiming that the exclusive arrangement between Howard Memorial Hospital and Dr. Wentworth violated the Sherman Act. He also claims that the Hospital violated Title VII by discriminating against him because he is Mormon. Dr. Mitchell also pleaded a number of pendent state claims. The district court entered summary judgment for the Hospital on the antitrust claims on the ground that its activities did not, as a matter of law, have sufficient impact on interstate commerce to create jurisdiction under the Sherman Act. The district court also

granted defendants' motion to dismiss the Title VII counts on the ground that Dr. Mitchell was not engaged in any employment relationships which are protected by Title VII. Finally, the court dismissed the pendent claims and entered judgment for the defendants. Our jurisdiction rests on 28 U.S.C. § 1291.

I

Dr. Mitchell argues that because the Hospital receives a substantial portion of its $5,000,000 annual revenues from out-of-state public and private insurance programs, because the Hospital purchases an unknown amount of medical supplies from out-of-state sources, and because the radiology department alone generates over $600,000 a year in revenue, the Hospital's activities, although local in nature, substantially affect interstate commerce. We review a summary judgment de novo. *Hall v. State of Hawaii*, 791 F.2d 759, 761 (9th Cir.1986).

In *McLain v. Real Estate Bd.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), the Supreme Court held that to establish jurisdiction under the Sherman Act a plaintiff must show either "that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce." *Id.*, 444 U.S. at 242, 100 S.Ct. at 509. As the Ninth Circuit has interpreted *McLain*, to establish jurisdiction under the Sherman Act, Dr. Mitchell is required to identify a relevant aspect of interstate commerce and then show "as a matter of practical economics" that the Hospital's activities have a "not insubstantial effect on the interstate

commerce involved." *Palmer v. Roosevelt Lake Log Owners Ass'n, Inc.*, 651 F.2d 1289, 1291 (9th Cir.1981).[1]

■ We agree with the district court that Dr. Mitchell has failed to show a not insubstantial effect on any appreciable activity in interstate commerce.[2] Although the Supreme Court has recognized that the receipt of insurance payments and the purchase of hospital supplies from out-of-state sources are relevant to the determination of whether a hospital's activities substantially affect interstate commerce, *see Hospital Building Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 744, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976), as the district court observed, "determinations of [Sherman Act] jurisdiction [in hospital cases] are based not merely upon revenue figures, but on a broad aggregate of factors including proximity of the facility to regional centers of commerce or to other states, treatment of significant numbers of out-of-state patients, purchase of equipment and supplies from interstate sources and interstate transfer of payment for patient care." Order Granting Plaintiff's Motion for Reconsideration and Granting Defendants' Motion for Summary Judgment. [Excerpt of Record, Tab No. 43, at 3.]

■ We agree with the district court that these factors weigh against finding Sherman Act jurisdiction here. The small defendant hospital is located in a remote area of northern California over 150 miles from either the Oregon or Nevada borders and over 100 miles from the nearest significant urban center, San Francisco. According to the uncontroverted evidence in the record, the Hospital has not provided medi-

---

**1.** Appellees argue that *McLain* requires that only the Hospital's "infected" activities, i.e., those of the radiology department, be considered for the purposes of Sherman Act jurisdiction. Dr. Mitchell, on the other hand, pointing to *Western Waste Serv. Systems v. Universal Waste Control*, 616 F.2d 1094, 1097 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980), argues that the Ninth Circuit has adopted a "general business" activities test which requires examination of all of the Hospital's business activities. We assume, without deciding, that all "general business" activities of the Hospital are relevant to our inquiry, including those out-

side the radiology department. Because we believe the district court's summary judgment was proper under either theory, we express no view at this time as to the state of Ninth Circuit law on this point.

**2.** The two relevant aspects of interstate commerce that Dr. Mitchell has identified are the fields of health insurance and medical supplies. For the reasons discussed below, we do not believe that either of these areas is significantly enough affected by the Hospital's activities to support Sherman Act jurisdiction.

cal services for even one out-of-state patient at least since 1983.[3] The mere fact that this small hospital receives some out-of-state insurance payments and may have purchased some supplies from out-of-state sources does not amount to a showing that as a matter of practical economics the hospital's activities have a not insubstantial effect on any interstate commerce.[4]

As the decisions of other courts make clear, whether a hospital's activities sufficiently affect interstate commerce to create Sherman Act jurisdiction is a highly fact-based question calling for common sense judgment. Dr. Mitchell cites several hospital cases in which courts have found a sufficient impact on interstate commerce to support Sherman Act jurisdiction. In *Mishler v. St. Anthony's Hosp. Systems,* 694 F.2d 1225 (10th Cir.1981), for example, the Tenth Circuit reversed the district court's dismissal of the complaint because the plaintiff doctor alleged that the hospital received substantial revenues from out-of-state insurance, that the hospital received medical supplies from out-of-state, and that the hospital provided services to out-of-state patients. *Id.* at 1227. Similarly, in *Tarleton v. Meharry Medical College,* 717 F.2d 1523 (6th Cir.1983), the Sixth Circuit found jurisdiction where the defendant medical college provided services for a substantial number of out-of-state patients, actively recruited its students and faculty from other states, obtained significant amounts of medical supplies from out-of-state, and received both private and public funding from out-of-state. *See also Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715 (10th Cir.1980) (en banc) (same facts as *Mishler*).[5]

Other courts, however, have held that Sherman Act jurisdiction does not extend to claims against hospital defendants in somewhat similar circumstances. In *Doe v. St. Joseph's Hosp.,* 788 F.2d 411 (7th Cir.1986), for example, the Seventh Circuit held that allegations that the defendant hospital had purchased medical supplies out of state, received reimbursements from out-of-state insurance programs, treated out-of-state patients, and shared medical information and training across state lines were legally insufficient to establish Sherman Act jurisdiction. *Id.* at 417. And in a case relatively close to the one at hand, the Eighth Circuit upheld the dismissal of a Sherman Act claim in which the plaintiff doctor alleged that the defendant hospital purchased supplies from out-of-state sources and that 88% of the defendant hospital's bills were paid by third-party payors, 33% of which were Medicare payments. *Hayden v. Bracy,* 744 F.2d 1338, 1342–43 (8th Cir.1984).

Our canvassing of the hospital cases supports our judgment that Dr. Mitchell has failed to make a showing sufficient to establish Sherman Act jurisdiction.[6] The cases in which courts have found Sherman

3. According to the uncontroverted affidavit of the Hospital's administrator, Howard Memorial has serviced no out-of-state patients since 1983 and its radiology department, the focal point of Dr. Mitchell's claim, has purchased no equipment or supplies from out-of-state sources. Excerpt of Record at Tab No. 17.

4. Dr. Mitchell alleges that the hospital purchases an unknown quantity of supplies out of state, but argues that without further discovery he cannot ascertain the precise amount. We do not feel that further discovery on this point could produce evidence that would change our conclusion that this rural California hospital's activities do not affect any aspect of interstate commerce sufficient to trigger Sherman Act jurisdiction.

5. Although not relied on by Dr. Mitchell, in *Hospital Building Co. v. Rex Hospital Trustees,*

425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the Supreme Court reversed the dismissal of a Sherman Act claim against a hospital which allegedly purchased 80% of its supplies out of state, serviced out-of-state patients, received insurance payments from out-of-state companies, and was involved in a multi-million dollar expansion financed in large part by loans from out-of-state sources.

6. Dr. Mitchell's reliance on *Palmer v. Roosevelt Log Owners Ass'n,* 651 F.2d 1289 (9th Cir.1981), a non-hospital case, is also misplaced. In *Palmer,* plaintiff alleged that the defendants had conspired to monopolize trade in the retrieval and sale of abandoned logs on Roosevelt Lake. This court found jurisdiction, despite the relatively small dollar amounts involved, because the alleged restraint would "unreasonably burden[ ] the free and uninterrupted flow" of Washington lumber products out-of-state. *Id.* at 1292.

Act jurisdiction involve hospitals whose activities appear to have had a much greater effect on interstate commerce than the activities of the hospital in this case. In sum, we hold that "as a matter of practical economics" Dr. Mitchell has failed to make a sufficient showing of effect on interstate commerce to establish Sherman Act jurisdiction.

## II

Dr. Mitchell also appeals the district court's dismissal of his Title VII counts for failure to state a claim. The district court dismissed the Title VII counts with prejudice on the ground that Dr. Mitchell, as an independent contractor with the Hospital, did not have an employment relationship with either the Hospital or with his patients which is protected by Title VII. We review de novo dismissals under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Guillory v. County of Orange*, 731 F.2d 1379, 1381 (9th Cir.1984).

### A

Dr. Mitchell argues first that the district court erred in rejecting his factual allegations that for some purposes he was an employee of the Hospital, not an independent contractor.[7] He contends that the facts alleged in his Title VII counts are sufficient to withstand a motion to dismiss for failure to state a claim. We agree.

It is axiomatic that in considering a motion to dismiss under Rule 12(b)(6) the district court must accept as true all facts as alleged by the plaintiff. *Hospital Building Co.*, 425 U.S. at 740, 96 S.Ct. at 1850. Moreover, a plaintiff's claims should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We feel that Dr. Mitchell's complaint satisfies this standard and that the district court erred in rejecting as legally insufficient Dr. Mitchell's allegations that, for the purposes of Title VII, he was an employee of defendant Hospital.

■ As we noted in *Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir.1980), determining whether a relationship is one of employment, in which case Title VII protections apply, or rather one of independent contractual affiliation, in which case they do not, requires a fact-specific inquiry which "depends upon the economic realities of the situation." *Id.* at 883. This is not to say that there are no guidelines to aid courts in this inquiry. In *Lutcher* itself we identified a number of factors that should be considered when determining whether an employment relationship existed, the primary one being the extent to which the "employer" has a right to control the means and manner of the worker's performance. *Id.* Other factors include: whether the "employer" or the individual in question furnishes the equipment used and the place of work; the length of time during which the individual has worked; the method of payment; and whether the work is an integral part of the business of the "employer." *Id.* at n. 5.

■ When these factors are examined in light of Dr. Mitchell's factual allegations, it becomes clear that the pleadings are not insufficient on their face. Dr. Mitchell alleges that all radiology services were provided at the Hospital, and that at least some of the equipment used was provided by the Hospital. First Amended Complaint at ¶ 30. Moreover, and perhaps more important, Dr. Mitchell alleges that his agreement with the Hospital provided that he would treat Hospital patients; he does not

---

7. The district court, apparently relying on Dr. Mitchell's own use of the term "independent contractor" to describe his relationship with the hospital, First Amended Complaint at ¶ 61, "reject[ed] plaintiff's assertions that he was, for some purposes, an employee of the hospital...." Order Granting Defendants' Motion for Summary Judgment on Counts 1 and 2 and Motion to Dismiss Counts 3–15, at 3. Dr. Mitch-

ell points out, however, that his self-characterization as an independent contractor does not appear in the portion of his complaint which alleges Title VII violations. Clearly, such an inconsistency does not render the pleadings inadequate. Fed.R.Civ.P. 8(e)(2). *See also* C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1283 (1969).

allege that he used the Hospital's facilities to treat his own patients. *Id.* In addition, Dr. Mitchell alleges that his agreement with the Hospital provided that he would receive in compensation for his services forty percent of the gross billings of the radiology department during the time the agreement was in effect. *Id.* Although it is not entirely clear that this method of payment tends to bolster Dr. Mitchell's assertion that, for Title VII purposes, he was an employee of the Hospital, the fact that Dr. Mitchell was paid by the Hospital rather than by the patients he treated may very well support his position. In general, it may be inferred, from the facts alleged, that the Hospital enjoyed considerable control over "the means and manner" of Dr. Mitchell's performance. Thus, this is not a situation in which "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Accordingly, we reverse the district court's dismissal of his Title VII counts.

### B

Dr. Mitchell also argues that even if he did not enjoy an employment relationship with the Hospital which was protected by Title VII, he nonetheless stated a Title VII claim by alleging that the Hospital's actions interfered with his employment opportunities with his patients. On the basis of the facts alleged, we cannot agree.

 In *Lutcher*, we recognized that a Title VII plaintiff need not aver the existence of a protected employment relationship with the defendant, but rather could state a claim under Title VII by averring that a defendant's actions interfered "with an individual's employment opportunities with another employer." 633 F.2d at 883 n. 3.[8] We also noted in *Lutcher*, however, that "there must be some connection with an employment relationship for Title VII protections to apply." *Id.* at 883. Here, Dr. Mitchell has not alleged any facts which would support a finding that his relationships with his patients or prospec-

tive patients are employment relationships for the purposes of Title VII. The *Lutcher* factors discussed above strongly suggest that the traditional physician/patient relationship is not one of employee/employer and as such is not protected under Title VII. Because Dr. Mitchell has not averred that his relationships with his patients in any way diverge from the traditional physician/patient relationship, we hold that as a matter of law his allegations that the Hospital interfered with his relationships with his patients fail to state a claim for relief under Title VII. *See Beverley v. Douglas,* 591 F.Supp. 1321, 1328 (S.D.N.Y.1984) (arriving at same conclusion); *but see Doe,* 788 F.2d at 425 (physician/patient relationship may be covered by Title VII).

### C

 Finally, Dr. Mitchell argues that the Hospital interfered with his employment relationship with the professional corporation of which he is the sole shareholder. We reject this argument because we believe that the relationship between an individual and his wholly owned professional corporation is not an employment relationship that Congress intended to protect under Title VII. *Gomez v. Alexian Bros. Hosp. of San Jose,* 698 F.2d 1019 (9th Cir. 1983), upon which Dr. Mitchell relies, is clearly distinguishable. *Gomez* involved a corporation that employed a number of doctors who rendered medical services as part of the corporation's group medical practice. *Id.* at 1020. In contrast, Dr. Mitchell is both the sole shareholder and sole employee of his professional corporation.

The parties shall bear their own costs on this appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

8. This view is consistent with the positions of at least two other circuits. *See Sibley Memorial* *Hosp. v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973); *Doe,* 788 F.2d 411.