Leydell BAKER, Plaintiff–Appellant,

v.

**McNEIL ISLAND CORRECTIONS CENTER, Defendant–Appellee.**

No. 86–4064.

United States Court of Appeals,
Ninth Circuit.

Submitted July 11, 1988 *.

Decided Oct. 12, 1988.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Richard J. Stone, Los Angeles, Cal., for plaintiff-appellant.

Robert C. Hargreaves, Asst. Atty. Gen., Olympia, Wash., for defendant-appellee.

Before POOLE, CANBY and LEAVY, Circuit Judges.

LEAVY, Circuit Judge: ·

## FACTS AND PROCEDURAL HISTORY

The appellant Leydell Baker was incarcerated in the McNeil Island Corrections Center Annex (the Corrections Center), a minimum security prison in the State of Washington. Baker applied for a job as a library aide in the Corrections Center Annex Library in early 1984. An inmate library aide assists the Annex librarian and receives approximately $30 per month as well as training.

Baker was not chosen for the library aide position even though he contends a prison employee in charge of inmate assignments told him he was "next in line" for that position. Baker, who is black, claims he was not selected solely because of his race. He alleges the state librarian did not want to work with a black man.

After receiving an Equal Employment Opportunity Commission (EEOC) right-to-sue letter dated October 11, 1985, Baker brought an action against the Corrections Center under section 703, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e–2.[1] He applied to proceed *in forma pauperis.* The district court granted his request and referred the case to a magistrate.

Shortly thereafter, Baker moved for appointment of counsel. The magistrate denied the motion, finding there was no right to appointment of counsel under 42 U.S.C. § 1983. Baker moved for reconsideration because his action was brought under Title VII, not under section 1983. Upon reconsideration, the magistrate stated he was dissatisfied with Baker's diligence in finding counsel and that he was uncertain if Baker's claim had merit.[2] In an order dated February 19, 1986, he reserved judgment until the Corrections Center responded to the motion for appointment of counsel, ordering the Corrections Center to "show cause within 30 days why this matter should not be scheduled for trial and plaintiff appointed counsel."

Baker then filed a supplemental affidavit listing the attorneys and legal firms he had contacted, without success. The Corrections Center did not respond to the magistrate's order within the thirty days allotted. Nonetheless, the magistrate denied Baker appointment of counsel on March 14, 1986, only twenty-four days after his February

---

**1.** Section 2000e–2(a)(1) states in relevant part: It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or national origin[.]

**2.** The plaintiff's attempt to find counsel and the merits of the claim are two of the three factors a court must consider in requests for appointment of counsel. The third factor is the plaintiff's financial status. *Bradshaw v. Zoological Soc'y of San Diego,* 662 F.2d 1301, 1318 (9th Cir.1981).

19, 1986 order, and without the response he had ordered from the Corrections Center.[3]

In his March 14, 1986 order, the magistrate found Baker's claim without legal merit. He stated: "This court is aware of no precedent applying 42 U.S.C. § 2000e to the prison-prisoner context. It is far from obvious that the sharply curtailed individual rights of prisoners extends to employment discrimination legislation." Baker filed a motion to reconsider the magistrate's order, arguing that his claim had merit. He contended, *inter alia*, that: (1) he was denied a job at the Annex library because the female civilian staff of the Washington State Library there feared blacks; (2) the job at the Annex library would have given him the opportunity to become an employee of the Washington State Library, and that he would have had numerous benefits from such employment; (3) if he had received the position, he "would not have been discriminated against and would received [sic] equal protection under the law and due process as guaranteed in the 14th amendment of the United States Constitution"; (4) the Department [of Corrections] was trying to keep him in confinement by denying him an opportunity for employment with the Washington State Library; (5) the right-to-sue letter from the EEOC showed his claim had merit; (6) the Corrections Center changed the referral procedure when he applied for the position; (7) even if there was no legal precedent applying Title VII to the prison/prisoner context, his position was that there was no right to discriminate in prison; and (8) he filed the complaint because "he would have direct employment with the Washington State Library and this was out of the prison setting and context and would apply to rights guaranteed in 42 U.S.C. section 2000e."

On April 29, 1986, the district court affirmed the magistrate's order denying Baker appointment of counsel.

On April 15, 1986, the Corrections Center moved to dismiss Baker's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for summary judgment under Federal Rule of Civil Procedure 56(b). The Corrections Center argued that no claim was stated under Title VII, because no employment relationship existed between itself and Baker, nor had it interfered in Baker's employment opportunities with another. It characterized its relationship with Baker as that of prison/prisoner only, because the work positions are part of an inmate's correctional programming.

The magistrate found Title VII inapplicable to prison work assignments, and recommended dismissal. The district court adopted the magistrate's report and granted the Correction Center's motion to dismiss. Baker, appearing *pro se*, appealed from the judgment.

Baker argues the district court erred in adopting the magistrate's finding that his case was without legal merit. He claims Title VII is applicable because there is an employer-employee relationship in the paid State library position. He contends the denial of counsel was an abuse of discretion, and that he should have been granted leave to amend his complaint.

We reverse. Baker's complaint should not have been dismissed. Whether a prisoner can state a Title VII claim under these circumstances is a case of first impression in all circuits.

## DISCUSSION

*Whether The District Court Erred In Granting The Motion To Dismiss*

### 1. Nature Of The Motion

◼ Baker argues the magistrate and the district court ruled on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Corrections Center insists the ruling

---

**3.** In a letter to the magistrate dated March 19, 1986, counsel for the Corrections Center stated it was their "understanding that the [March 14 order] denying plaintiff's motion for appointment of counsel has obviated the need for de-

fendant to respond to the February order." However, counsel stated in the letter that it would discuss the merits of Baker's claim in a motion to dismiss. *Id.*

was on its motion for summary judgment under Rule 56, because the district court relied on an affidavit attached to the motion to dismiss.

The Corrections Center moved to dismiss Baker's complaint for failure to state a claim under Rule 12(b)(6) or alternatively, for summary judgment under Rule 56. The memorandum in support of its motion is titled *"Failure To State A Claim."* An affidavit (Doug Jacques') was attached to the motion. Baker filed no opposition.

Ordinarily, in considering a motion to dismiss under Rule 12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). However, although the magistrate relied on the affidavit, he considered only whether the complaint failed to state a claim. His report contains no language discussing the presence or absence of genuine issues of material fact. The district court made no additional findings. On appeal, the Corrections Center does not make the argument that the district court erred when it dismissed the complaint for failure to state a claim. Instead, it argues the dismissal followed a grant of summary judgment, because the district court relied on the affidavit.

We will treat the dismissal as one pursuant to Rule 12(b)(6) for failure to state a claim. The language of the report and order reflect that the magistrate treated the motion under this rule. The Corrections Center is not entitled to summary judgment against a *pro se* litigant merely by attaching an affidavit to its motion. We have observed that courts are reluctant to grant summary judgment for defendants in Title VII cases where the proof is in the hands of the alleged wrongdoers. *Lutcher v. Musician's Local 47,* 633 F.2d 880, 882–83 (9th Cir.1980). The Corrections Center did not abandon its Rule 12(b)(6) motion by also moving for summary judgment.

**2. Whether Baker's Complaint Failed To State A Claim**

■ A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984). Review is limited to the contents of the complaint. *Id.* A complaint should not be dismissed under the rule "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). In civil rights cases, where petitioner is *pro se,* the court has an obligation to construe the pleadings liberally and to afford petitioner any benefit of the doubt. *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).

■ In his complaint, Baker states:

On May 30, 1984, I was turned down for the position of McNeil Island Corrections Center librarian. Lt. John Hupp had told me that I was next in line for that position. Because I did not get the job, I was discriminated against because of my race which is black, because the state librarian did not want to work with a black man, the applications were not on a first come basis as I was told the appropriates [sic] are, and I have the capability to do the job.

On the cover sheet, Baker states: "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964 for Employment Discrimination".

Title VII protections apply only where there is some connection with an employment relationship. *Lutcher,* 633 F.2d at 883. The connection need not necessarily be direct. It can encompass a defendant who is subject to Title VII and who interferes with an individual's employment op-

portunities with another employer. *Id.* & n. 3.

In adopting the magistrate's report, the district court found no Title VII cases brought by a prisoner against a prison. To decide whether to dismiss the complaint, the magistrate applied eleven factors developed by the District of Columbia Circuit Court of Appeals to distinguish employees from independent contractors, a distinction which is necessary in many Title VII cases. *See Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979). While observing that certain factors militated against finding an employment relationship,[4] the magistrate thought the most important factor—the extent of the employer's right to control the means and manner of the worker's performance—"strongly suggests because of the prison context that the plaintiff was an employee under Title VII." *See also Lutcher,* 633 F.2d at 883 & n. 5 (lists the factors considered in this circuit).

Noting the guidelines might not be applicable in "the unusual situation at hand," the district court also examined the economic realities, as *Spirides* requires. It concluded that common sense differences exist between inmate work assignments and ordinary employment relationships, in that the former "are more in the nature of rehabilitation and employment training than in the nature of commercial employment."

Baker's complaint should not have been dismissed. First, the district court recognized the most important factor to determine whether an employment relationship exists strongly suggested that Baker was an employee. Thus, the court could not be convinced beyond doubt that no set of facts could be proven to entitle Baker to relief. Even if it concluded that "economic realities" removed this doubt, the pleadings state a fact which, construed most favorably to Baker, points to the existence of an employment relationship. Baker's pleading

refers to "the state librarian [not wanting] to work with a black man." This allegation supports an inference of an employment relationship between state librarians and the inmate, since the state librarian "work[s] with" the inmate library aide and appears to have a say in hiring. ("I did not get the job ... because the state librarian did not want to work with a black man.")

Further, when the district court adopted the magistrate's report, the EEOC had published a Notice of Policy Statement that Title VII applied to prisoners eligible for work release.[5] According to the EEOC's policy, once a prison recommends a prisoner for work release, the prisoner is seeking an employment opportunity with an employer, and the jail "becomes a third party who has the ability to control or interfere with the inmate's employment opportunities with another employer, and its activities are covered by the Act." We have stated that Title VII applies in such a situation. *Mitchell v. Frank R. Howard Memorial Hosp.,* 853 F.2d 762, 767 (9th Cir.1988) (citing *Lutcher,* 633 F.2d at 883 & n. 3). While the library aide position is not work release, it is not beyond doubt that a claim could not be proved under Title VII. We simply do not know enough about that position.

Finally, 42 U.S.C. § 2000e–2(d) states that it is unlawful for an employer to discriminate on the basis of race in apprenticeships and "other training or retraining, including on-the-job training programs...." The district court specifically recognized that work assignments such as the library aide position are "in the nature of rehabilitation *and employment training* rather than in the nature of commercial employment." (Emphasis added.) It is not beyond doubt that no claim could be proved in this situation.

These factors demonstrate that Baker's complaint should not have been dismissed

---

**4.** The factors militating against an employment relationship are: no leave time is afforded to prisoners, no retirement benefits are included, no social security taxes are paid, and the parties' primary intent is to get the prisoner through his sentence and release him.

**5.** The policy statement was issued on May 30, 1986. The district court's judgment was entered June 26, 1986. Had counsel been appointed, the policy statement might have been brought to the court's attention.

for failure to state a claim. With this disposition, we need not reach the issue of whether Baker should have been allowed to amend his complaint.

*Whether The Failure To Appoint Counsel Was An Abuse of Discretion*

A denial of a motion for appointment of counsel is reviewed for an abuse of discretion. *Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1318 (9th Cir. 1981).

The district court denied appointment of counsel because it found no merit in Baker's claim. Since we conclude that Baker has stated a claim, on remand the district court must consider whether counsel should be appointed in light of our holding.

REVERSED AND REMANDED.