Filed: May 5, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1348
(CA-95-1604-A)

Abb W. Mangram,

Plaintiff - Appellant,

versus

General Motors Corporation,

Defendant - Appellee.

O R D E R

The Court amends its opinion filed March 6, 1997, and cited at 108 F.3d 61 as follows:

On page 2, section 1, line 3 -- the attorney information for Appellee is corrected to read: "J. Bradley Bennett, Ellen Fels Berkman, MILLER, CASSIDY, LARROCA & LEWIN, L.L.P., Washington, D.C., for Appellee."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ABB W. MANGRAM,
Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant-Appellee,                              No. 96-1348

     and

LEE M. MCDANIEL; KEN
WASHINGTON,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-95-1604-A)

Argued: January 27, 1997

Decided: March 6, 1997

Before WILKINSON, Chief Judge, and HAMILTON and
WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Hamilton and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Clinton A. Jackson, C. A. JACKSON & ASSOCIATES,
Washington, D.C., for Appellant. Joe R. Caldwell, Jr., MILLER,

CASSIDY, LARROCA & LEWIN, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** David A. Branch, C. A. JACKSON & ASSO-CIATES, Washington, D.C., for Appellant. J. Bradley Bennett, Ellen Fels Berkman, MILLER, CASSIDY, LARROCA & LEWIN, L.L.P., Washington, D.C., for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Abb Mangram appeals the district court's dismissal of his Age Dis-crimination in Employment Act ("ADEA") claim against General Motors Corporation. Mangram argues that the district court wrongly determined that he was not an employee and therefore not covered under the ADEA. We disagree. At no time during or after Mangram's training to become an automobile dealer did he enter an employment relationship with General Motors. Accordingly, we affirm the judg-ment of the district court.

I.

In October 1989, Abb Mangram joined General Motors' Minority Dealership Development Program. This twelve-month program, which provides dealership opportunities to minority entrepreneurs, includes classroom and on-site dealership training. On October 11, 1989, Mangram formalized his entry into the Program by signing a written Memorandum of Understanding ("MOU"). The MOU described the Program and set forth the terms and conditions of Man-gram's participation. The MOU included General Motors' agreement to pay Mangram a monthly stipend of $3,000 during his enrollment. At the conclusion of the Program in September 1990, General Motors agreed to extend Mangram's stipend for an additional twelve months.

The MOU made clear, however, that "[a]s a participant in the Academy program, you [Mangram] will not be an employee of Gen-eral Motors Corporation." Furthermore, Mangram stipulated that he was not entitled to a number of benefits that are normally associated with an employment relationship including annual leave, retirement

2

benefits, and the payment of social security taxes. The agreement also stated, "In no event, however, shall your participation in the program continue beyond 12 months."

The MOU further stipulated that a trainee's participation in the Program carried no guarantee of a dealership. To the contrary, the MOU provided that nothing in the agreement was intended to be construed as "constituting any assurance or promise by General Motors" that trainees would be offered a dealership upon completion of the Program.

After September 1991, Mangram ceased to draw any form of compensation from General Motors. Furthermore, after the training program ended in September 1990, he provided no further services to General Motors. During this post-trainee period, Mangram's complaint alleges only that General Motors "required" him to maintain $100,000 in liquid assets and forego "alternate business activities," if he wished to accept a dealership should one become available.

Nearly four years after Mangram completed the Program, he alleges that General Motors discriminated against him on account of his age. According to Mangram's complaint, a representative of the company told him on June 20, 1994, "Let's face it, nobody is going to offer you a Dealership, none of the Divisions will take a chance on you because you are too old; there are younger candidates with more money." Mangram's EEOC Charge of Discrimination makes clear that this alleged event is the sole basis for his claim. In the box marked "Date Discrimination Took Place," Mangram identified "6/20/94" as both the earliest and latest date on which the discrimination allegedly occurred.

On November 17, 1995, Mangram filed suit against General Motors alleging discrimination in violation of the ADEA and several state law causes of action. In response, General Motors filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Mangram was not covered by the ADEA because he was never a General Motors employee. After a hearing, the district court granted General Motors' motion, dismissing the ADEA claim with prejudice and Mangram's remaining state law claims without prejudice. Mangram now appeals.

3

II.

Section 4(a)(1) of the ADEA provides, in pertinent part:

> It shall be unlawful for an employer -- to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). As we have made clear, the ADEA does not cover all individuals. Rather, "an `individual' only has a cause of action under this provision if he is an `employee.'" Garrett v. Phillips Mills, Inc., 721 F.2d 979, 980 (4th Cir. 1983) (citation omitted).

The ADEA defines an "employee" simply as "an individual employed by any employer." 29 U.S.C. § 630(f). To elucidate this definition, the circuit adopted a test which focuses on the control the putative employer exercises over the alleged employee, and eleven other factors:

> (1) the kind of occupation . . . (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment . . . (6) the manner in which the work relationship is terminated . . . (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Garrett, 721 F.2d at 982 (citation omitted); cf. Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 322-23 (1992) (applying common law principles to define the term "employee" under ERISA); Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739-40 (1989) (applying common law principles to define the term "employee" under the Copyright Act).

4

Mangram's claim must fail because he has not alleged facts which would establish that he was an employee or that an employment relationship was ever contemplated during any phase of his relationship with General Motors. The complaint establishes only that General Motors exercised control over Mangram's schedule during the one year that he was in the Program, and that General Motors furnished the facilities for the Program. An examination of the other <u>Garrett</u> factors reveals, however, that even while Mangram was a participant in the Program, he was a student -- not a General Motors employee.

Most important with respect to the other <u>Garrett</u> factors, neither party intended Mangram's participation in the Program to establish an employment relationship. The MOU, which Mangram signed, specifically provided that he was not an employee. In <u>Garrett</u>, this court relied on a similar agreement in determining that the plaintiff was not an employee under the ADEA, emphasizing that "Phillips and Garrett, in their written agreement, expressly provided that Garrett <u>was not to be an employee</u> of Phillips." 721 F.2d at 982 (emphasis added). Other circuits have also relied on written agreements in holding that a plaintiff was not an employee under the ADEA. <u>See Oestman v. National Farmers Union Ins. Co.</u>, 958 F.2d 303, 306 (10th Cir. 1992); <u>Hayden v. La-Z-Boy Chair Co.</u>, 9 F.3d 617, 622 (7th Cir. 1993).

The other <u>Garrett</u> factors cumulatively establish that there was no employment relationship during Mangram's participation in the Program. General Motors never paid social security taxes for Mangram during the time he participated in the Dealership Program or at any point thereafter, nor did General Motors make any withholdings or deductions from the monthly training stipend he received. As Mangram concedes, his stipend was not a salary, and he was solely responsible for satisfying all state, local, and federal tax requirements. Mangram never accumulated retirement benefits or earned annual leave. Moreover, the Dealership Program was not an essential or "integral part" of General Motors' business, but rather was designed to provide "an alternate path to Dealership ownership for minority entrepreneurs." Finally, Mangram's participation in the Program lasted for only twelve months and ended by its own terms upon his graduation in September 1990.

If Mangram was not an employee during his participation in the Dealership Program, he certainly was not an employee on the date the

5

alleged discrimination took place. On June 20, 1994, Mangram was neither being paid by nor providing any services to General Motors. Furthermore, General Motors did not exercise significant control over Mangram's activities. Mangram's complaint alleges only that General Motors "required" him to maintain $100,000 in liquid assets and forego "alternate business activities," if he wished to pursue and accept dealership opportunities. As the district court noted, these minor constraints are far more in the nature of a contractual relationship than they are an employer-employee relationship. Any potential contract claims Mangram might possess must be pursued in state court.

Even if Mangram had succeeded in becoming a dealer for General Motors, he still would not have been an employee. An individual who shares in a firm's management or who exercises a significant amount of independence from the firm is not considered an employee. See Fountain v. Metcalf, Zima & Co., 925 F.2d 1398, 1401 (11th Cir. 1991); EEOC v. Dowd & Dowd, Ltd., 736 F.2d 1177, 1178 (7th Cir. 1984); Garrett, 721 F.2d at 982. As Mangram admits in his complaint, dealerships are incorporated separately from General Motors and are not subsidiaries of General Motors. Indeed, if Mangram had become a dealer, he would have been the proprietor of a separate corporation -- not a General Motors employee. See Moore v. Ford Motor Co., 901 F. Supp. 1293, 1297 (N.D. Ill. 1995) ("[A] dealer/proprietor exercises too much independence to be considered an employee of the automobile manufacturer.").

In sum, Mangram asks us to find that he held "employee" status as a prospective dealer when he would not have held that status if he had actually become a General Motors dealer. Mangram at best has demonstrated that he was a trainee for a non-employment relationship. As a prospective non-employee, Mangram simply cannot maintain an employment discrimination claim.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

6