141 F.3d 1310
 21 Employee Benefits Cas. 2953, 98 Cal. Daily
Op. Serv. 2754,
98 Daily Journal D.A.R. 3793,
Pens. Plan Guide (CCH) P 23942F
Thomas A. BARNHART, husband; Nancy J. Barnhart, wife,
Plaintiffs-Appellants,
v.
NEW YORK LIFE INSURANCE COMPANY, a New York corporation;
New York Insurance and Annuity Corporation, a
Delaware corporation, Defendants-Appellees.
 No. 96-36148.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1998.
Decided April 15, 1998.
 
 Robert L. Parlette, Davis, Arneil, Dorsey, Kight & Parlette, Wenatchee, Washington, for plaintiffs-appellants.
 Elizabeth Bryson, New York City; C. William Bailey, Mills Meyers Swartling, Seattle, Washington, for defendants-appellees.
 Rita M. Theisen, LeBoeuf, Lamb, Green & MacRae, L.L.P., Washington, DC; for Amicus Curiae American Council of Life Insurance.
 Appeal from the United States District Court for the Eastern District of Washington (Spokane); Robert H. Whaley, District Judge, Presiding. D.C. No. CV-95-00090-RHW.
 Before: SCHROEDER, ALARCON and HAWKINS, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Plaintiffs, Thomas A. Barnhart ("Barnhart") and Nancy J. Barnhart, appeal from the grant of summary judgment in favor of defendant, New York Life Insurance Company ("New York Life"), and the dismissal of this action. Barnhart acted as an insurance agent for New York Life until New York Life terminated Barnhart's contract. Barnhart claims that New York Life 1) violated Barnhart's rights under the Employment Retirement Income Security Act ("ERISA") and the Age Discrimination Employment Act ("ADEA"), and 2) breached its contract with Barnhart. We affirm because the record shows that Barnhart was an independent contractor and New York Life terminated Barnhart's contract in accordance with its express termination provision.
 
 
 2
 * In 1978, Barnhart entered into a "Field Underwriter's Contract" (the "Contract") with New York Life, which authorized Barnhart to sell insurance policies on behalf of New York Life and provided the terms of commission he would receive for these sales. The Contract provided no termination date but instead contained a provision allowing either party to terminate the Contract with or without cause with thirty days written notice.
 
 
 3
 In 1993, Paul Colgan ("Colgan"), New York Life's general manager of the Yakima office in Washington, imposed minimum production standards on sales for all New York Life agents in that region. Colgan informed Barnhart that he would be required to meet these standards starting in 1993 or Colgan would recommend that Barnhart's contract with New York Life be terminated. Barnhart failed to meet these standards in 1993 or in the first quarter of 1994. In accordance with Colgan's recommendation, New York Life sent Barnhart a termination letter dated April 27, 1994. The letter informed Barnhart that his contract with New York Life was terminated under section nine of the Contract and stated Barnhart's effective termination date as May 27, 1994, thirty days from the date of this letter.
 
 
 4
 Barnhart filed an action against New York Life in a Washington state court. New York Life removed the action to federal court. The district court determined that because Barnhart was an independent contractor he could not bring claims under ERISA or the ADEA. The court also held that New York Life did not breach its contract with Barnhart because it merely invoked its right to terminate under an express provision in the Contract. Barnhart has filed a timely appeal.
 
 II
 
 5
 Barnhart contends that there are genuine issues of material fact as to whether Barnhart was an independent contractor or employee under ERISA and the ADEA. We review a grant of summary judgment de novo. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997).
 
 
 6
 A claimant under ERISA and the ADEA must establish himself as an "employee." See 29 U.S.C. § 623(a) (ADEA); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 320-21, 112 S.Ct. 1344, 1346-47, 117 L.Ed.2d 581 (1992) (discussing requirement under ERISA); Frey v. California, 982 F.2d 399, 401-02 (9th Cir.1993) (discussing requirement under the ADEA). The term "employee" is defined in ERISA and the ADEA as "any individual employed by an employer." 29 U.S.C. § 1002(6) (ERISA); 29 U.S.C. § 630(f) (ADEA). In Darden, the Supreme Court adopted a common-law agency test expounding several equally weighted factors to be assessed in determining who qualifies as an "employee" for purposes of ERISA. 503 U.S. at 323, 112 S.Ct. at 1348. The purpose of the test is to determine the extent to which the hiring party controls "the manner and means by which the product is accomplished." Id. The factors include:
 
 
 7
 1) the skill required; 2) source of the instrumentalities and tools; 3) location of the work; 4) duration of the relationship between the parties; 5) whether the hiring party has the right to assign additional projects to the hired party; 6) the extent of the hired party's discretion over when and how long to work; 7) the method of payment; 8) the hired party's role in hiring and paying assistants; 9) whether the work is part of the regular business of the hiring party; 10) whether the hiring party is in business; 11) the provision of employee benefits; and 12) the tax treatment of the hired party.
 
 
 8
 Darden, 503 U.S. at 323-24, 112 S.Ct. at 1348-49.
 
 
 9
 Although the Supreme Court did not specifically address the ADEA in Darden, we find no reason to deviate from the common-law test for purposes of determining employee status under the ADEA. See Speen v. Crown Clothing Corp., 102 F.3d 625, 631 (1st Cir.1996) (adopting the common-law test "for determining who qualifies as an 'employee' under the ADEA" and disregarding decisions to the contrary in other circuits); Frankel v. Bally, Inc., 987 F.2d 86, 90 (2d Cir.1993) (holding that determination of whether someone is an employee under the ADEA must be made "in accordance with common law agency principles"); but see Mangram v. General Motors Corp., 108 F.3d 61, 62 (4th Cir.1997) (applying the hybrid test as adopted in previous cases); Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1495-96 (11th Cir.1993) (finding it unnecessary to decide which test to apply in determining whether a claimant is an employee under the ADEA because both the common-law test and the hybrid test focus on the hiring party's control).
 
 
 10
 Barnhart argues that at the very least his status with New York Life is a hybrid between that of independent contractor and employee. Barnhart fails to point to any provision within ERISA or the ADEA that provide protection for someone who can demonstrate only some characteristics of an employee. In this sense, the law provides an all or nothing approach. Either Barnhart is an employee and thus entitled to the protection of ERISA and the ADEA, or he is not. The material facts regarding Barnhart's relationship with New York Life are not in dispute. An application of the common-law factors supports the conclusion that Barnhart is an independent contractor.
 
 
 11
 There are factors that support the existence of an employment relationship between Barnhart and New York Life. New York Life provided benefits such as life insurance, pension benefits, and a 401K program, which are usually associated with employment. The relationship was long term, lasting sixteen years. New York Life retained the right to terminate Barnhart's contract at-will. The unilateral imposition of minimum standards by New York Life also infers an employer's control. Additionally, New York Life employed Barnhart for three years and during that time trained Barnhart how to be an agent.
 
 
 12
 Considering all factors as a whole, however, the balance tips in favor of independent contractor status. The contract Barnhart signed contained clear language stating that Barnhart would be considered an independent contractor, not an employee. Consistent with this, Barnhart was free to operate his business as he saw fit without day-to-day intrusions. After the first three-year term of employment, Barnhart was paid commission only. Barnhart's tax returns indicate that he received most of his income from self-employment. Additionally, Barnhart was not dependent solely upon New York Life for his income. Barnhart admittedly sold competitors' products. In light of these facts, we conclude that Barnhart was not an employee of New York Life for purposes of ERISA and the ADEA.
 
 
 13
 Our conclusion is bolstered by the fact that other courts have categorized insurance agents as independent contractors. See, e.g., Birchem v. Knights of Columbus, 116 F.3d 310 (8th Cir.1997) (applying the common-law agency test to determine that an insurance agent is an independent contractor and therefore not entitled to receive protection as an employee under the Americans with Disabilities Act); Oestman v. National Farmers Union Ins. Co., 958 F.2d 303, 305-06 (10th Cir.1992) (applying hybrid test, but relying on similar factors in determining that an insurance agent was an independent contractor and not an employee under the ADEA).
 
 
 14
 Barnhart urges us to alter the requirement that claimants under ERISA and the ADEA must be employees. Barnhart relies on the Washington Supreme Court's decision in Marquis v. City of Spokane, 130 Wash.2d 97, 922 P.2d 43 (1996) (en banc), in asserting that an independent contractor should be provided protection under ERISA and the ADEA. In Marquis, the court interpreted the Revised Code of Washington ("RCW") § 49.60.030 as not limited to employees. The court held that "an independent contractor may bring an action for discrimination in the making or performance of a contract for personal services...." Id. at 45.
 
 
 15
 Barnhart argues that the policy behind this decision should lead us to a similar conclusion with respect to ERISA and the ADEA. We are not persuaded. The decision in Marquis is one of statutory interpretation that is specific to the RCW and as such the analysis in that case is inapplicable here. We decline Barnhart's request to create new law based on one state's willingness to adopt legislation broader than that adopted by Congress.
 
 III
 
 16
 Barnhart asserted several theories in the district court in support of his contention that New York Life breached its contract with him. The court found that none of these theories was sufficient to counteract the operation of the clear and unambiguous contract provision that gave either party the right to terminate with or without cause by giving thirty days' notice. On appeal, Barnhart contends that this was error. We disagree.
 
 A. Equitable or Promissory Estoppel
 
 17
 Barnhart argues that the district court erred in rejecting theories asserted under equitable and promissory estoppel. The claim of equitable estoppel is distinct from the claim of promissory estoppel. See 4 Samuel Williston & Richard A. Lord, Williston on Contracts § 8:4, 38-46 (4th ed.1992) (explaining the distinction between equitable and promissory estoppel as resting mainly upon the type of representation that induces reliance). Barnhart's claim is more appropriately analyzed under the doctrine of promissory estoppel, not equitable estoppel. The representations made by Ronald Dawson ("Dawson"), New York Life recruiter, upon which Barnhart allegedly relied are more akin to statements of future intent than past or present fact.
 
 
 18
 Washington has adopted the Restatement's articulation of promissory estoppel. Havens v. C & D Plastics, Inc., 68 Wash.App. 159, 842 P.2d 975, 978 (1992), aff'd in part, rev'd in part, 124 Wash.2d 158, 876 P.2d 435 (1994). The Restatement defines the doctrine of promissory estoppel as follows:
 
 
 19
 A promise which the promisor should reasonably expect to induce action of forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
 
 
 20
 Restatement (Second) of Contracts § 90 (1979). The doctrine of promissory estoppel is used to enforce a promise where there is a lack of consideration and as such does not apply to the facts of this case. See Hatfield v. Columbia Federal Savings Bank, 57 Wash.App. 876, 790 P.2d 1258, 1263 (1990) (holding that the doctrine of promissory estoppel did not apply where promise "was supported by bargained for consideration").
 
 
 21
 In this case there is an express contract and neither of the parties contend that there was not adequate consideration. Rather, Barnhart contends that he relied on Dawson's statements in deciding to enter into the Contract with New York Life. Barnhart's action in reliance, entering into a contract with New York Life to sell insurance policies, is consistent with the consideration provided by the Contract. Therefore, the theory of promissory estoppel does not help Barnhart.
 
 B. Ambiguity
 
 22
 Barnhart argues that the language of the Contract is ambiguous. He contends that the provision allowing either party to terminate the contract with thirty days' notice, with or without cause ("provision 9") conflicts with the provision listing several actions that would constitute cause for termination ("provision 10"). He contends that New York Life was allowed to terminate Barnhart's contract only for a cause listed in provision 10. We disagree.
 
 
 23
 "A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." Mayer v. Pierce County Medical Bureau, Inc., 80 Wash.App. 416, 909 P.2d 1323, 1326 (1995). The provisions in the Contract between Barnhart and New York Life are not ambiguous and may reasonably read together to provide two different, yet complementary termination provisions.
 
 
 24
 Although Barnhart is correct in arguing that provision 9 does not require cause while provision 10 does, this is not fatal to a harmonious interpretation. First, provision 10 states that it is to operate "[i]n addition to" provision 9. Second, provision 9 gives either party the right to terminate the contract with or without cause, whereas provision 10 pertains only to the right of New York Life as "the Company" to terminate the Contract for a specified cause. Third, a termination under the terms of provision 9 requires thirty days after the date of notice to take effect. A termination for cause provided for in provision 10 is effective immediately upon receipt of notice. In light of these distinctions, the terms are not ambiguous, but rather operate together to provide different ways in which the contract may be terminated.
 
 
 25
 C. New York Life's unilateral imposition of minimum production requirements
 
 
 26
 Barnhart argues that New York Life unilaterally imposed minimum production standards not required in its original contract. To bolster this position Barnhart points to course of dealings to support his contention that no minimum production standard exists in Barnhart's contract. Barnhart argues that these production standards are unenforceable and "should not be used as grounds for terminating his contract." (Barnhart's Opening Br. at 18.) New York Life contends, on the other hand, that Barnhart's contract was terminated in accordance with provision 9.
 
 
 27
 We conclude that under Washington law any attempted modification is meaningless in light of the express contract provision that either party can terminate the contract with or without cause. Were we to adopt Barnhart's argument, we would have to conclude that the greater power, to terminate without cause, does not include the lesser, to modify the terms of the contract. The law in Washington does not support this conclusion. See Mayflower Air-Conditioners, Inc. v. West Coast Heating Supply, Inc., 54 Wash.2d 211, 339 P.2d 89, 91 (1959) (holding that the power to terminate a contract at-will subsumes the power to modify its terms); Mall Tool Co. v. Far West Equip. Co., 45 Wash.2d 158, 273 P.2d 652, 655 (1954) (stating that "[t]he agreement being terminable at will, Mall could at any time propose a modification thereof as a condition of its continuance").
 
 
 28
 Barnhart cites Wagner v. Wagner, 95 Wash.2d 94, 621 P.2d 1279, 1281-82 (1980) (en banc), in support of his argument that New York Life may not unilaterally modify the Contract. Wagner merely provides that modification may not be unilateral, but must be the result of mutual assent. This does not address the heart of the issue, namely, what is the proper interplay between New York Life's alleged unilateral modification and its right to terminate without cause. If Barnhart's failure to meet minimum production standards is an inadequate cause for terminating the contract, presumably New York Life is still free to terminate the contract for no cause whatsoever. Additionally, similar to the distributors in Mayflower and Mall Tool, Barnhart did not dispute the changes implemented by New York Life until after his contract was terminated. Therefore, we conclude that the district court's decision is correct and that summary judgment was properly granted in favor of New York Life.
 
 
 29
 The district court's grant of summary judgment in favor of New York Life is AFFIRMED.