166 F.3d 1290
 79 Fair Empl.Prac.Cas. (BNA) 1, 74 Empl. Prac.
Dec. P 45,720,
75 Empl. Prac. Dec. P 45,720,
99 Cal. Daily Op. Serv. 1030,
1999 Daily Journal D.A.R. 1289
Sherrie Ann ADCOCK, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
CHRYSLER CORPORATION, Defendant-Appellee,
and
Chrysler Credit Corporation, Defendant.
 No. 97-55607.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1998.
Decided Feb. 8, 1999.
 
 Jeffrey S. Benice, The Benice Group, Irvine, California, for the plaintiff-appellant.
 Susan J. Boyle, Littler Mendelson, San Diego, California, for the defendant-appellee.
 Appeal from the United States District Court for the Central District of California; Gary L. Taylor, District Judge, Presiding. D.C. No. CV-95-01046-GLT.
 Before: BEEZER, TASHIMA, and WARDLAW, Circuit Judges.
 WARDLAW, Circuit Judge:
 
 
 1
 This appeal presents the question whether the contemplated car dealer franchise agreement at issue created an employment relationship so as to trigger the protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (1994) ("Title VII"). The district court granted summary judgment in favor of Appellee Chrysler Corporation ("Chrysler"), ruling that it did not. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * Appellant Sherrie Ann Adcock ("Adcock") brought suit against Chrysler[1] under Title VII, alleging that Chrysler's refusal to award her a dealership in Taft, California, was the result of sex discrimination.[2] The district court granted summary judgment for Chrysler, concluding that Title VII protections did not apply to this case because the contemplated dealer franchise agreement would have constituted a "continuing contract, not an employment relationship" subject to the statute. We review a grant of summary judgment de novo. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). See Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. See id.
 
 II
 
 3
 Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (1994). One of Congress' objectives in enacting Title VII was "to achieve equality of employment opportunities...." Griggs v. Duke Power Co., 401 U.S. 424, 429, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). "Consequently, there must be some connection with an employment relationship for Title VII protections to apply." Lutcher v. Musicians Union Local 47, 633 F.2d 880, 883 (9th Cir.1980); see also Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir.1988). Title VII protects employees, but does not protect independent contractors. See Lutcher, 633 F.2d at 883; Mitchell v. Frank R. Howard Memorial Hosp., 853 F.2d 762, 766 (9th Cir.1988).
 
 
 4
 Determining whether a relationship is one of employment or independent contractual affiliation requires a "fact-specific inquiry which 'depends on the economic realities of the situation.' " Id. (quoting Lutcher, 633 F.2d at 883).[3] The primary factor is the extent of the employer's right to control the means and manner of the worker's performance. See Lutcher, 633 F.2d at 883. Other factors relevant to the inquiry include, but are not limited to: the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or by a specialist without supervision; whether the employer furnishes the equipment used and the place of work; the method of payment; whether the employer pays social security taxes; the manner in which the work relationship is terminated; and the intention of the parties. See id. at n. 5.
 
 
 5
 The parties agree that Chrysler's "Sales and Service Agreement" and "Additional Terms and Provisions" (collectively, the "Agreement") would have governed their relationship had Chrysler awarded Adcock a dealership. The Agreement is the only relevant evidence in the record regarding whether the relationship contemplated by the parties was an employment relationship subject to Title VII.
 
 
 6
 The overwhelming majority of the Lutcher factors support the district court's holding that Chrysler and Adcock contemplated an independent contractual affiliation rather than an employment relationship. Under the Agreement, the dealer, not Chrysler, controls the dealership and the day-to-day vehicle-selling operations. The Agreement does not specify that the dealer must utilize any particular means or manner to sell Chrysler's vehicles, but states only that the dealer is to use its "best efforts to promote energetically and sell aggressively and effectively." The dealer maintains discretion over dealership employment decisions, and over the means and manner of advertising. Further, even though the Agreement requires the dealer to conduct its operations "at least during the hours usual in the trade" of the dealer's sales locality, the actual hours of the dealership are left to the dealer's discretion. See Barnhart v. New York Life Ins. Co., 141 F.3d 1310, 1313 (9th Cir.1998) (appellant's "free[dom] to operate his business as he saw fit without day-to-day instructions" weighed in favor of independent contractor status).
 
 
 7
 Under the Agreement, the dealer, not Chrysler, owns the dealership, premises, equipment and vehicles sold by the dealership. This weighs strongly in favor of finding an independent contractual affiliation. Cf. Loomis Cabinet, 20 F.3d at 942 ("most significant[ ]" factor in support of finding employment relationship was that employer owned work site and provided all equipment, and employees provided only labor); Mitchell, 853 F.2d at 766 (provision by radiologist of services at hospital, partially with equipment provided by the hospital, supported finding that radiologist was hospital employee, not independent contractor).
 
 
 8
 Chrysler does not pay the dealer a salary or wage. Rather, the dealer generates income by selling vehicles it owns to consumers. In fact, the dealer receives no compensation from Chrysler. Chrysler does not pay social security taxes for the dealer, nor does it provide retirement, health care, worker's compensation or vacation benefits to the dealer or the dealer's employees, all of which are usually associated with employment. See Barnhart, 141 F.3d at 1314.
 
 
 9
 That both parties are entitled to terminate the relationship upon written notice, and certain conditions must exist for Chrysler to terminate, demonstrate that Chrysler does not have exclusive control over the manner in which the agreement may be terminated, and thus that the relationship would not have been one of employment. See Lutcher, 633 F.2d at 883 n. 5.
 
 
 10
 Finally, the intention of the parties supports the finding that the relationship was to be one of independent contractual affiliation. The Agreement explicitly provides, "[t]his Agreement does not create the relationship of principal and agent between [Chrysler] and [the dealer], and under no circumstances is either party to be considered the agent of the other." This clear language, though not dispositive, reflects the parties' intention that Adcock would have been an independent contractor, not an employee. See Barnhart, 141 F.3d at 1313 (independent contractor status supported where, inter alia, appellant signed contract containing clear language that he would be considered an independent contractor, not an employee); accord Mangram v. General Motors Corp., 108 F.3d 61, 63 (4th Cir.1997) (Memorandum of Understanding that "specifically provided that [claimant] was not an employee" signed by claimant contributed to finding of independent contractor status).
 
 
 11
 Adcock asserts that certain aspects of the Agreement demonstrate ways in which Chrysler would "control" the "manner and means" by which the dealer performs. For instance, Chrysler determines which products the dealer may purchase and sets minimum sales requirements. Chrysler also retains the right to approve the appearance of the dealership and may specify the dealership location. The dealership must meet certain financial standards including net working capital, net worth, wholesale credit and retail financing. Further, the dealer must engage in advertising and sales promotion programs, and Chrysler must be allowed easy access to and use of the dealer's accounting and other information.
 
 
 12
 Although a few terms of the Agreement weigh in favor of an employment relationship, all of the factors must be considered as a whole in determining employment/independent contractor status. See Barnhart, 141 F.3d at 1313. On balance, because the overwhelming majority of factors weigh in favor of independent contractor status, we conclude that the Agreement contemplated by Chrysler and Adcock would not have created an employment relationship. Our analysis is bolstered by the Fourth Circuit's decision in Mangram, 108 F.3d at 63-64, in which our sister circuit held that a prospective automobile dealer, had he been granted a dealership, would not have been considered an employee of the automobile manufacturer because of the substantial independence enjoyed by dealers.[4] Therefore, the district court correctly held that Title VII does not apply to Adcock's claims.
 
 III
 
 13
 We conclude that the district court did not err in granting summary judgment for Chrysler on Adcock's Title VII claim. We do not reach the merits of Adcock's discrimination claim because we affirm on the ground that the contemplated Agreement would not have created an employment relationship subject to Title VII. The judgment appealed from is affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Adcock brought suit against Chrysler and Chrysler Credit Corporation, but voluntarily filed a notice of dismissal as to Chrysler Credit Corp. on January 31, 1996 in the district court
 
 
 [2]
 Adcock also claims that Chrysler's later refusal to award her a dealership in San Juan Capistrano, California, violated Title VII's prohibition against sex discrimination. Although this Court need not reach the question whether the district court correctly found that that claim was not administratively exhausted, the discussion that follows would bar that claim as well
 
 
 [3]
 In Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), the Supreme Court held that whether an individual was an "employee" for purposes of an ERISA benefits claim was subject to an analysis of common law agency principles. The Court's holding applies to statutes that contain the term "employee" and do not otherwise define the term. See id. at 321, 112 S.Ct. 1344; Loomis Cabinet Co. v. Occupational Safety & Health Review Comm'n, 20 F.3d 938, 941 (9th Cir.1994) (applying Darden analysis to definition of "employee" in OSHA claim). Title VII defines "employee" exactly as does ERISA. Compare Lutcher, 633 F.2d at 883, with Darden, 503 U.S. at 323-24, 112 S.Ct. 1344. The common law agency approach is essentially indistinguishable from the approach previously used by this Circuit in analyzing "employment relationship" for Title VII purposes. See Loomis Cabinet, 20 F.3d at 941-42. However, because the precise question before this Court turns on whether the parties' agreement would have constituted an employment relationship, and not on the definition of employee, we rely on Lutcher, which specifically distinguished employment from independent contractual affiliation, id. at 883, and was not abrogated by the common law approach to defining "employee" of Darden
 
 
 [4]
 Although Mangram and Barnhart involved claims under the ADEA, complementary sections of the ADEA and Title VII are construed consistently. See Romain v. Shear, 799 F.2d 1416, 1418 (9th Cir.1986) (citing Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979))