**James S. TATE, Jr., M.D., Plaintiff,**

v.

**UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, et al., Defendants.**

**Case No. 2:08–cv–1183–LDG (GWF).**

United States District Court,
D. Nevada.

July 16, 2009.

---

894

Jacob L. Hafter, Michael K. Naethe, Law Office of Jacob Hafter & Associates, M. Sami Bakdash, Black & Lobello, Las Vegas, NV, for Plaintiff.

Michele L. Roberts, Lynn M. Hansen, Mario P. Lovato, Jimmerson Hansen, P.C., Emily G. Clark, Thomas G. Ryan, Lisa Wong Lackland, Lewis and Roca LLP, Las Vegas, NV, for Defendants.

## ORDER

LLOYD D. GEORGE, District Judge.

Following an altercation involving the plaintiff, Dr. James Tate, and the parent and grandparent of a minor patient at University Medical Center of Southern Nevada (UMC), Dr. John Fildes removed Tate from the Trauma Department call schedule. Tate subsequently brought this suit against Fildes, UMC, Kathleen Silver, Dr. John Ellerton, Dr. Marvin Bernstein, the Medical and Dental Staff of UMC (Medical Staff), and each of the County Commissioners.[1]

Staff, Ellerton, Fildes, and Bernstein (the Moving Defendants) move to dismiss Tate's Second Amended Complaint (# 90). UMC, the County Commissioners, and Silver (the Joining Defendants) have joined the motion (# 91). Tate opposes the motion (# 95). The Moving Defendants filed a reply (# 100), in which they were joined by the Joining Defendants (# 101).

Tate has also moved for a preliminary injunction (# 87) and for partial summary judgment (# 94).

### Motion to Dismiss

The defendants' motion to dismiss, brought pursuant to Fed.R.Civ.P. 12(b)(6), challenges whether the plaintiff's complaint states "a claim upon which relief can be granted." In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.,* (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 900 (9th Cir. 2007).

### Factual Background

As alleged by Tate in his complaint, he currently has clinical privileges to practice medicine at UMC. In 1991, he entered into a Trauma Services [sic][2] Agreement (TSA) with UMC to provide trauma surgery services to UMC, and provided those services until August 8, 2008.

On April 5, 2008, Tate found himself in a "situation" with the father and grandmother of a minor patient. In his complaint, he alleges that they were verbally hostile and aggressive, that he removed himself from the room, that they came after him in a fast and aggressive manner, stopping an inch away from him, that he placed his hands on the father and pushed him back "with the intent to create some space," and

---

1. It would appear Tate is suing the county commissioners in their capacity members of the Board of Trustees for UMC.

2. Tate has referenced the TSA in his complaint, and relies upon it to assert several claims. The Moving Defendants have attached a copy of the Agreement, signed by Tate, to the motion to dismiss. The document is titled "Trauma Surgery Agreement."

subsequently did the same with the grandmother. After a member of the nursing staff intervened and pulled the father and grandmother away, he finished his departure.

On August 8, Silver (whom Tate alleges is an employee of UMC) sent Fildes (whom Tate alleges is UMC's Medical Director of Trauma Services) a letter requesting that he remove Tate from the Trauma Department call schedule. On that same date, Fildes sent Tate a letter stating that, effective immediately, he would be removed from the Trauma Department call schedule indefinitely. He has not worked as a trauma surgeon at UMC since that date.

Tate filed his original complaint in this action on September 8, 2008.

By letter dated November 18, 2008, the Medical Executive Committee of the Medical Staff of UMC notified Tate that his re-credentialing was concluded "with a limited reappointment to the Active Medical Staff with conditions, including both the requirements for physical and mental evaluations and the requirement to undergo active treatment for anger management issues."

*First Claim: § 1983 Claim based on 14th Amendment Due Process Violation*

In his § 1983 due process claim, Tate asserts that he had a right to, but was not afforded, due process prior to his removal from the trauma call schedule by Fildes at Silver's direction. The defendants argue that Tate failed to allege facts stating a claim under § 1983. As recognized by the parties, to state a claim under § 1983, Tate must allege two essential elements: "(1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Redman v. County of San Diego,* 942 F.2d 1435, 1439 (9th Cir.1991); *West v. Atkins,*

487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Tate points to allegations of the complaint from which the court could reasonably infer that each of the defendants is either an entity that can act under color of law or a person in a position in which he or she can act under color of law.

The first element, however, is not satisfied merely by the ability of a defendant to act under color of state law, but by alleging an action taken by the defendant under color of state law. As to most of the defendants, Tate has not met his burden of alleging an act under color of law. To maintain an individual-, or personal-, capacity suit, a plaintiff must show that the defendant, acting under color of state law, was personally involved in the deprivation of his federal rights. In *Kentucky v. Graham,* 473 U.S. 159, 163, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court unraveled "once again the distinctions between personal- and official-capacity suits." Official-capacity suits are " 'another way of pleading an action against an entity of which an officer is an agent.' " *Id.* at 165, 105 S.Ct. 3099 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). To establish the liability of a governmental entity under § 1983, the plaintiff must show the entity itself was a moving force behind the constitutional violation. "[T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.*

In contrast, an individual-capacity suit seeks to hold a state officer liable "for *actions he takes* under color of state law." *Id.* at 165, 105 S.Ct. 3099 (emphasis added). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal

right." *Id.* at 166, 105 S.Ct. 3099. Liability cannot be established on a theory of *respondeat superior. Monell, supra; Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Absent an official's participation or direction in the violation of a plaintiff's constitutional rights, he cannot be held personally liable in an individual-capacity suit under § 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984). Thus, to state a claim, a plaintiff must allege facts, not conclusions, showing the personal involvement of a defendant. Conversely, a plaintiff fails to state a claim by asserting that a defendant is liable because he or she is the supervisor of another.

In his opposition, Tate does not identify any allegation, relevant to his due process claim, of an action taken by either Ellerton or Bernstein. Accordingly, the claim must be dismissed as to these two defendants.

 Broadly construing the complaint as to the County Commissioners, it appears that Tate has sued these individuals *solely* in their official capacity as members of the UMC Board of Trustees. That is, the claim is brought against the entity of which Commissioners are agents: the UMC Board of Trustees. Tate's complaint also indicates that he is alleging that the Medical Staff is an entity, as is UMC. Tate has not identified any allegation in his complaint from which it can be reasonably inferred that a policy or custom of any of these entities played a part in the deprivation of his due process rights. Accordingly, the claim must be dismissed as to these defendants.

 As to the remaining two defendants, Fildes and Silver, Tate has alleged that Silver requested Fildes to remove him from the trauma call schedule, and that Fildes did so. The court finds that, broadly construed, Tate has sufficiently alleged that Fildes and Silver took an action under color of state law.

 More significant, however, is that Tate may not rely merely upon the allegation of an action, but must allege an action that deprived him of a federal right. His claim indicates that he alleges he was deprived of a constitutionally protected property interest in violation of his due process rights. There can be no valid dispute that Tate cannot be deprived of a protected property interest without due process of law. To litigate his claim in federal court, however, Tate must allege facts from which it can be reasonably inferred that he had, and was deprived of, a property interest. Tate asserts, and the defendants do not dispute, that a physician might have a property interest in clinical privileges. Tate has not alleged that either Silver or Fildes limited or revoked his clinical privileges. Rather, despite clearly alleging that he "currently possess [sic] clinical privileges to practice medicine at [UMC]," Tate alleges in his complaint that his removal from the trauma call schedule effected a "de facto suspension" of his clinical privileges. In opposing the motion to dismiss, Tate does not cite to any authority that suggests or indicates that a hospital's removal of a physician from the trauma on-call schedule is a de facto suspension of clinical privileges.

While Tate may have a property interest in clinical privileges, he lacks any property interest in an employment position providing one of several different avenues by which he can exercise those privileges. *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 481 (7th Cir.1988) (staff privileges reflect the decision that a physician is qualified to practice in a facility, but do not confer employment or the right to continued employment in a particular position). As alleged by Tate, he had a contract with UMC to provide trauma surgery

services. Thus, while UMC entered into an agreement with Tate pursuant to which he could be paid for services rendered, which services would require that he exercise his clinical privileges, that agreement did not create, expand, or limit his privileges at UMC. Rather, it merely provided Tate with employment by which he could exercise his existing privileges. Accepting Tate's allegation that Silver and Fildes removed Tate from the on-call schedule for trauma, such removal did not suspend or revoke his underlying privileges at UMC, but limited his employment for UMC.

Tate argues that his privilege to treat or admit trauma patients was limited by his removal from the trauma on-call schedule. He asserts that only on-call trauma physicians can admit trauma patients. Assuming the truth of this allegation, as the court must, it is immaterial and irrelevant. Tate has not alleged or shown that the *privilege* to admit a trauma patient arises from the TSA and his employment as a trauma physician. While the TSA may have provided an opportunity to exercise the privilege of admitting a trauma patient, it did not confer the privilege to admit a trauma patient on Tate. That clinical privilege exists separate and distinct from the TSA.

In this case, Tate's complaint permits only the inference that Silver and Fildes limited one of several avenues by which Tate could exercise his privilege to admit patients, but did not that limit the privilege itself. As the constitutionally protected property interest lies in the clinical privilege, rather than an employment position that provides one avenue to exercise those privileges, the court finds that the first claim must be dismissed with prejudice as to each defendant.

*Third, Fourth, Fifth Claims: Anti-Trust Violations.*

Relying on *Mitchell v. Frank R. Howard Mem'l Hosp.*, 853 F.2d 762 (9th Cir. 1988), the defendants argue that this court's jurisdiction over anti-trust claims depends upon plaintiff alleging the involvement of interstate commerce. They point out, however, that Tate's complaint lacks any allegation that their activity was itself interstate activity or that it had an appreciable effect on interstate commerce. Tate's cursory opposition relative to his anti-trust claims does not address this issue. Accordingly, the court finds that, at a minimum, the claims must be dismissed without prejudice.

The defendants further argue that Tate's first two anti-trust claims—conspiracy to restrain trade and conspiracy to monopolize—must be dismissed for a failure to plead a conspiracy. They point to a lack of any allegation of a conspiracy between defendants and the lack of any allegation of the specific defendants that were a party to the conspiracy. (That is, the allegations of the complaint indicate that not every defendant could be a party to a conspiracy. Thus, Tate's allegations directed generally at "defendants" are insufficient, and amount to nothing more than an impermissible label or conclusion.) Once again, Tate's cursory opposition fails to address the issue, and he does not direct the court's attention to any allegation of conspiracy. Accordingly, for this additional reason, Tate's third and fourth claims, alleging a conspiracy to restrain trade and a conspiracy to monopolize, must be dismissed without prejudice.[3]

As to Tate's third anti-trust claim, the moving defendants argue that he has

---

**3.** The defendants note an additional issue that may ultimately require dismissal of the anti-trust claims with prejudice: that the allegations of the complaint suggest a legal inability for the defendants to conspire. The court will not address this issue at this time.

failed to allege the requisite elements of a refusal to deal/essential facilities claim as to these defendants. They note, specifically, the lack of any allegation that any of the moving defendants are monopolists in control of an essential facility. Once again, Tate's cursory opposition fails to address this issue. Accordingly, for this additional reason, Tate's fifth claim must be dismissed without prejudice.

*Sixth Claim for Relief: Breach of Contract*

The moving defendants argue that Tate cannot maintain this claim as to them because they are not parties to the TSA, the contract upon which Tate brings this claim. They note that the agreement was entered into by Tate and UMC. In opposing this motion, Tate has not responded to the argument that he may bring this claim only against a party to the agreement. Accordingly, the court will grant the motion, with prejudice, as to each defendant except UMC.

*Count 7: Tortious Interference with Business Relationships and Potential Business Relationships (brought against Fildes, Silver, and UMC).*

Fildes is the only moving defendant against whom this claim was brought. He argues that, as an agent or representative of UMC, he cannot tortiously interfere with a contract to which UMC is a party, because UMC could not tortiously interfere with the contract to which it is a party. *See Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP.*, 440 F.Supp.2d 1184, 1194 (D.Nev.2006) ("In Nevada . . . a party, as a matter of law, cannot tortiously interfere with its own contract.") Fildes' argument would apply equally to Silver. Further, Fildes' underlying argument—that UMC cannot tor-

tiously interfere with the TSA—plainly applies to UMC.

Without dispute, Tate alleged that Fildes "at all times relevant herein was and is the Medical Director of Trauma Services for Defendant University Medical Center of Southern Nevada." Similarly, he has alleged that Silver "at all times relevant herein was and is an employee of the Defendant University Medical Center of Southern Nevada."

In response, Tate argues that he can maintain the claim against Fildes because he is an "independent body." Tate does not cite to any allegation of his complaint in support of this argument, and does not address the allegations of his complaint to the contrary. Accordingly, the court will dismiss the claim with prejudice.

*Count 8: Tortious Interference with Employment, Trade or Profession against Fildes, Silver, and UMC; Count 9: Negligent Interference with Prospective Economic Advantages against all defendants.*

The defendants argue that these two claims must be dismissed because such claims do not exist, and may not be brought, in Nevada. Tate has not opposed, establishing his consent to dismissal of these two claims.

*Count 10: Breach of Covenant of Good Faith and Fair Dealing against all Defendants; Count 11: Negligence.*

■ The moving defendants argue that Count 10 must fail because Tate did not allege that they are parties to either possible contract alleged by Tate in Count 10: the TSA agreement with UMC and the contract implied by the "Bylaws, Credentialing Manual, and other governing documents." [4] The court agrees that Tate has not alleged that any defendant, other than UMC, is a party to the TSA agreement.

---

4. For ease of reference, the court will collectively refer to the Bylaws, Credentialing Manual and other governing documents of the Medical Staff merely as the "Bylaws."

Accordingly, the claim will be dismissed as to each defendant, except UMC, to the extent it alleges a breach of the TSA's implied covenant of good faith and fair dealing.

■ The moving defendants' argument, however, fails to the extent it seeks dismissal of a claim of the breach of the implied covenant arising from the Bylaws because Tate did not allege that they were parties to the contract. As argued by the moving defendants, themselves, in opposing Count 11, Tate alleged that the Bylaws created a contract with them in Count 10.

Further, in light of the defendants' argument in Count 10 that they were not parties to a contract created by the Bylaws, the court will deny their motion to dismiss Count 11. Tate may proceed, in the alternative, on the theory that the defendants were not parties to a contract created by the Bylaws. Accordingly, the court will deny the motion as to Count 11.

*Count 13: Retaliation*

As pointed out by the defendants, Tate does not allege or suggest the legal basis for his claim for retaliation. They assume, and Tate does not suggest otherwise in opposition, that he is alleging a § 1983 First Amendment claim arising from his filing of this lawsuit. As the defendants note, Tate's complaint fails to allege that he is bringing the claim pursuant to § 1983, indicating to the court that the claim should be dismissed on this basis. Tate also fails to allege the individual actions of any defendant.

■ More importantly, the defendants note that the elements of a First Amendment retaliation claim by a public employee are (a) that the public employee engaged in protected speech, (b) he was subjected to an adverse employment action, and (c) his protected speech was a substantial motivating factor for the adverse action. *Lakeside–Scott v. Multno-*

*mah County,* 556 F.3d 797, 803 (9th Cir. 2009). In their primary argument, the defendants correctly note that a public employee's lawsuit must involve a matter of public concern to qualify as protected speech. *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir.2003). The allegations of the present lawsuit, however, establish that it concerns merely a private matter and thus does not qualify as protected speech.

■ Tate's opposition addresses only the defendant's secondary argument—that he was not subject to an adverse action. The opposition does not offer any argument, or citation to law, suggesting that the present lawsuit involves a matter of public concern or is protected speech. Accordingly, the claim will be dismissed with prejudice.

*Tate's Motion for Partial Summary Judgment*

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The failure to show a fact essential to one element, however, "necessarily renders all other facts

immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In his motion, Tate seeks summary judgment on his § 1983 due process claim, his three anti-trust claims, his claim for breach of the implied covenant of good faith and fair dealing, and his claim for negligence. As the court has dismissed the first four of these claims, Tate's motion is moot.

The court will also deny Tate's motion for summary judgment as to his claims for negligence and breach of the implied covenant of good faith and fair dealing. As best as the court can surmise from Tate's papers, fundamental to either claim is his argument that his removal from the trauma on-call schedule deprived him of a property right. As that argument is without merit, he cannot establish that he is entitled to judgment as a matter of law.

*Tate's Motion for Preliminary Injuction*

Tate's motion seeking a preliminary injunction requiring that he be placed on the trauma on-call schedule rests upon his § 1983 claim that his removal from that schedule violated his due process rights. As the court has dismissed that claim with prejudice, he cannot succeed in showing a likelihood of success on the merits.

Accordingly, for good cause shown,

THE COURT **ORDERS** that Moving Defendants' Motion to DISMISS (# 90), as joined by the Joining Defendants, is GRANTED as follows:

Count 1 is DISMISSED with prejudice as to all defendants;

Count 3 is DISMISSED without prejudice as to all defendants;

Count 4 is DISMISSED without prejudice as to all defendants;

Count 5 is DISMISSED without prejudice as to all defendants;

Count 6 is DISMISSED with prejudice as to all defendants except University Medical Center of Southern Nevada;

Count 7 is DISMISSED with prejudice as to all defendants;

Count 8 is DISMISSED with prejudice as to all defendants;

Count 9 is DISMISSED with prejudice as to all defendants;

To the extent that Count 10 alleges a breach of the covenant of good faith and fair dealing implied in the Trauma Surgery Agreement, Count 10 is DISMISSED with prejudice as to all defendants except as to University Medical Center of Southern Nevada;

Count 13 is DISMISSED with prejudice as to all defendants.

The plaintiffs' prayer for punitive damages is DISMISSED.

THE COURT FURTHER **ORDERS** that James S. Tate's Motion for Partial Summary Judgment (# 94) is DENIED;

THE COURT FURTHER **ORDERS** that James S. Tate's Motion for Preliminary Injunction (# 87) is DENIED.